Edward L. ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–1766.

District of Columbia Court of Appeals.

Argued Oct. 28, 2004.

Decided Jan. 19, 2006.

676

David S. Petron, with whom Jeffrey T. Green and Elizabeth P. Williams were on the brief, Washington, for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Barbara J. Valliere and Michael D. Brittin, Assistant United States Attorneys, were on the brief, for the United States.

Before SCHWELB, FARRELL and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

 A jury convicted appellant Edward L. Robinson of two first-degree felony and premeditated murders while armed, along with armed robbery, armed kidnaping, and related offenses. The trial judge sentenced Robinson to life imprisonment without parole for the murders and lesser prison terms for the other crimes. The main issue in this appeal is whether Robinson made a prima facie showing of unconstitutional discrimination in the selection of his jury, necessitating further judicial inquiry, when he objected to the prosecutor's peremptory challenge of a young black male juror who had answered no questions during the voir dire. While we agree with Robinson that a peremptory challenge motivated even in part by considerations of race or gender is contrary to the principles of equal protection enunciated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), we agree with the trial judge that Robinson did not make a prima facie case of such discrimination. His obligation under *Batson* to make a prima facie case was not rendered moot, moreover, merely because the government elected to furnish for the record a race-and gender-neutral reason for the strike. Accordingly, as Robinson's other claim of error during his trial is without merit,[1] we affirm his convictions, though a remand is necessary for re-sentencing on the murder counts.

## I.

### A. The *Batson* Challenge and the Trial Judge's Ruling

Following a lengthy voir dire of the prospective jurors, as the parties readied themselves to exercise their peremptory challenges, the trial judge called counsel for both sides to approach the bench. There the judge cautioned counsel to be mindful of their obligations under *Batson* and subsequent Supreme Court decisions not to strike jurors on account of their race or gender. If a pattern or other indicia of discrimination emerged, the judge warned, he would intervene and take appropriate measures. Midway through the process, the judge did just that. Remarking that "six of the government's

---

1. Robinson's only other claim of trial error relates to the judge's refusal to give the so-called "missing evidence" instruction, *see* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 2.41 (4th ed.1993), based on the government's failure to produce the shirt worn by the victim whom Robinson was accused of shooting and then robbing. Even if we assume for the sake of argument that the condition of the shirt (specifically, Robinson argues, the absence of a pocket or of blood stains on the pocket) would have been relevant and material to the dispute over whether Robinson robbed the victim, the testimony did not show that the missing shirt was peculiarly available (or, indeed, available at all) to the government. *See Thomas v. United States*, 447 A.2d 52, 57 (D.C.1982). Moreover, even if both the materiality and the availability requirements had been met, the judge plainly did not abuse his discretion in concluding that an inference that the missing evidence would have been adverse to the government was not "a natural and reasonable one" under the circumstances. *Dent v. United States*, 404 A.2d 165, 171 (D.C.1979) (citations omitted).

eight strikes have been against blacks and six of the defendant's eight strikes have been against whites," the judge expressed his concern that white jurors were being struck disproportionately and would be entirely excluded from the jury if the pattern continued. (It appears that out of the first thirty-two jurors, eleven were white (and the rest were black), meaning that only three white jurors were left when the judge spoke up.) In response, Robinson's trial counsel[2] disclaimed any intent to discriminate and complained that the prosecutor appeared to be aiming his strikes at "young blacks." Observing that age is not a prohibited consideration in jury selection, the judge discounted this charge. With a warning that he would scrutinize the remaining strikes "very carefully," the judge then permitted jury selection to proceed.

All told, the government used its initial ten peremptory challenges to strike six black female, two white female and two black male jurors. For the alternate juror seats, the government exercised an additional strike against a white male. The defense peremptorily struck two black females, four white females, three white males, and one black male, and did not exercise any of its allotted additional strikes.

At the end of the process, the prosecutor offered to make a record of the reasons for each of the government's peremptory strikes, even though the defense had not yet made an express *Batson* challenge. In response, the judge noted that this court had held in *Baxter v. United States*, 640 A.2d 714 (D.C.1994), that peremptory challenges based on age are constitutionally

permissible. Acknowledging that *Baxter* "did not ... reach the issue of whether a combination of race and age would be a violation" of equal protection, the judge expressed the view that "the mere fact that there may have been some strikes exercised against younger blacks" did not by itself amount to such a constitutional violation.

Robinson's counsel then decided to make the *Batson* challenge that is at issue in this appeal. While "we have blacks and whites on the jury[3] [and] mostly females,[4]" counsel stated, "we have nobody who is in my client's demographic group, we have no young black males." Charging that the prosecutor had struck "the only people who could possibly be considered to be in my client's circle," counsel "ask[ed] for an explanation of that." Pressed to be more specific, defense counsel identified two young black male jurors whom the prosecutor had struck, Juror 754 and Juror 627. Robinson's counsel admitted that he could not credibly contest the strike of Juror 754, who during the voir dire had expressed the belief that police in Illinois had murdered his brother. But counsel demanded an explanation for the prosecutor's strike of Juror 627, an 18–year–old black male who worked as a salesperson and lived in Northwest D.C. (not in the vicinity of the charged crimes). Because this juror had answered no questions during the voir dire, counsel emphasized, the prosecutor knew nothing else about him on which to base his strike. Moreover, counsel added, "there was a pattern," in that eight out of the government's first ten strikes were against black jurors.

---

**2.** Robinson is represented by different counsel on appeal.

**3.** The judge later stated for the record that ten out of the twelve "regular jurors" (i.e., not counting the alternates) were black.

**4.** Neither the parties nor the judge undertook to state more precisely the gender make-up of the jury selected or of the venire as a whole.

Finding these arguments unpersuasive, the trial judge ruled that defense counsel had not made a prima facie showing of intentional discrimination. The judge discounted the significance of the "pattern" that counsel identified, noting that any suggestion that the prosecutor attempted to exclude blacks from the jury was not borne out in light of the jury's ultimate makeup—that is, the judge stated, "you still have 10 black jurors." The judge accordingly declined to accept the prosecutor's repeated offer to take just a few minutes to state the reasons for his strikes on the record.[5] Instead, the judge suggested, the government was free to submit an affidavit or other written statement memorializing those reasons, in case the court of appeals disagreed with his ruling. Three weeks later, as the trial was nearing its end, the government submitted a "Memorandum Regarding Peremptory Strikes," in which it set forth the reasons for each of its strikes. Regarding Juror 627, the Memorandum explained that "[h]e was struck because of his young age. The

government was looking for an older and more experienced juror."[6] Upon receiving the Memorandum, Robinson did not renew his *Batson* challenge, and the trial judge did not return to the issue.

## B. Discussion

### 1. Mixed Motives and Batson

■■■ The Constitution prohibits purposeful discrimination on the basis of race or gender in the exercise of peremptory challenges to prospective jurors. *Batson,* 476 U.S. at 88, 106 S.Ct. 1712 (race); *J.E.B.,* 511 U.S. at 129, 146, 114 S.Ct. at 1419 (gender).[7] "The discriminatory exclusion of even a single juror is objectionable." *(Leon) Robinson v. United States,* 878 A.2d 1273, 1282 n. 18 (D.C.2005) (citing *J.E.B.,* 511 U.S. at 142, 114 S.Ct. 1419, and *Little, supra* footnote 5, 613 A.2d at 885–86). Preserved claims of unconstitutional discrimination in jury selection are not subject to harmless error analysis; the erroneous rejection of a *Batson* challenge[8] results in a "structural defect" that infects

---

**5.** In the interest of efficiency (and protecting against the possibility of a reversal on appeal), the judge could have accepted the prosecutor's offer to state his reason for striking Juror 627 and then could have made ruling on whether the stated reason was genuine or pretextual. *See Johnson v. California,* ——U.S. ——, ——, 125 S.Ct. 2410, 2418, 162 L.Ed.2d 129 (2005) ("The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question."); *Little v. United States,* 613 A.2d 880, 887–88 (D.C.1992) ("Where the [prima facie case] issue is close, 'conservation of judicial resources might well justify inquiry of the government attorney as to the reasons for making a strike,' ... especially since the prosecutor's burden in rebutting a prima facie case is neither onerous nor time-consuming.") (citations omitted).

**6.** As to Juror 754, the other black male juror identified by defense counsel, the govern-

ment's Memorandum provided the following explanation:

> This juror stated that the police had apparently arrested his brother for no reason in Illinois. A few weeks later, while the brother was in jail, he was beaten to death. The juror believed that the police were responsible for the beating. The government struck this juror out of concerns that the juror may have been unable to put aside his feelings about his brother's death during the trial.

**7.** Discrimination on the basis of ethnicity is likewise prohibited. *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

**8.** In this opinion, we employ the terms *"Batson* challenge" and *"Batson* violation" as convenient shorthand applicable to any unconstitutional discrimination in jury selection, whether or not the discrimination was based on race.

"[t]he entire conduct of the trial from beginning to end," *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), and hence is *per se* reversible. *See, e.g., Tankleff v. Senkowski*, 135 F.3d 235, 248 (2d Cir.1998); *accord, Card v. United States*, 776 A.2d 581, 586 n. 3 (D.C.2001) (citing cases), *vacated upon stipulation of dismissal of appeal*, 863 A.2d 821 (D.C.2004) (en banc).

Robinson charged the prosecution with striking Juror 627 for a combination of three reasons: the juror's race, his gender and his age. Although Robinson does not dispute that "age-based peremptory strikes are constitutionally permissible," *Baxter*, 640 A.2d at 718 n. 5, he argues that the strike nonetheless was infirm because it was motivated in part by the impermissible considerations of race and gender.

■ Past *Batson* cases in this court mostly have presented uncomplicated, single-motivation claims that potential jurors were excluded *solely* on account of their race or their gender. Recently, in *(Leon) Robinson*, we confronted a mixed motivation claim that black female jurors specifically were targeted for exclusion because of their race and their gender. Neither race nor gender alone was sufficient to explain the strikes in *(Leon) Robinson*, but the two factors in combination did appear sufficient to do so. We held that, just like peremptory strikes motivated by racial or gender bias alone, strikes motivated by those two impermissible reasons in combi-

nation are unconstitutional and subject to *Batson* challenge. 878 A.2d at 1285.

The mixed motivation issue that this court has not previously decided is whether a peremptory strike that is only partially motivated by impermissible bias (racial and/or gender in nature) is also subject to *Batson* challenge.[9] But if, for this court, that precise issue is one of first impression, then logic, common sense, and the decisions of numerous other courts leave us in little doubt as to its proper resolution. As a matter of logic and common sense, who would deny that a policy of, say, striking young black jurors while permitting young white jurors to serve would be racially discriminatory? To justify such strikes as solely age-based would be transparently pretextual, even if the strikes were age-based in part. And "[i]n the realm of constitutional law, whenever challenged action would be unlawful if improperly motivated, the Supreme Court has made it clear that the challenged action is invalid if motivated in part by an impermissible reason...." *Howard v. Senkowski*, 986 F.2d 24, 26 (2d Cir.1993). Because no sound reason exists to treat *Batson* challenges differently from other equal protection challenges that are subject to mixed motivation analysis, the Second Circuit in *Howard* and subsequently other courts considering the question uniformly have held that "*Batson* challenges may be brought by defendants who can show that racial [or gender] discrimination was a substantial part of the motivation for a prosecutor's peremptory challenges." *Id.* at 30.[10] This court unequivocally em-

**9.** As the trial judge in this case correctly noted, we did not reach the mixed motivation claim in *Baxter*. In that pre-*J.E.B.* case, the appellant argued that the prosecutor had violated his constitutional rights by striking potential jurors on the basis of age and sex. We concluded that neither claim had been preserved. *Baxter*, 640 A.2d at 717. Although we went on to say that strikes based on age were permissible, we declined to analyze the issues further under a plain error standard of review.

**10.** *See, e.g., Gattis v. Snyder*, 278 F.3d 222, 235 (3d Cir.2002); *Wallace v. Morrison*, 87 F.3d 1271, 1274 (11th Cir.1996); *United States v. Darden*, 70 F.3d 1507, 1530–32 (8th Cir.1995); *Jones v. Plaster*, 57 F.3d 417, 421–

braced that proposition when it decided the narrower issue presented in *(Leon) Robinson.* To prove a *Batson* violation, the court said,

> a defendant need not show that a prosecutor's strikes were motivated solely by racial or gender bias, to the exclusion of all other considerations. Such a requirement would render *Batson* a virtual nullity and divorce it from the real world of jury selection, for the motivations behind peremptory strikes are seldom so crystallized and singular. Mixed motives are the norm. However, even if the prosecutor acted from mixed motives, some of which were non-discriminatory, his actions deny equal protection and violate *Batson* if race or gender influenced his decision. A peremptory challenge may not be based even partially on an unlawful discriminatory reason.

878 A.2d at 1284 (citations omitted). We do not understand the government to be contesting these elementary principles.[11]

■ We now *hold* that even where the exclusion of a potential juror is motivated in substantial part by constitutionally permissible factors (such as the juror's age), the exclusion is a denial of equal protection and a *Batson* violation if it is partially motivated as well by the juror's race or gender. Accordingly, we hold that appellant Robinson raised a cognizable *Batson* challenge when he charged the prosecutor with purposefully striking Juror 627 because he was a "young black male." If the prosecutor in fact was influenced by Juror 627's race or gender, the strike was unlawful even if the juror's youth, a legitimate consideration under current law, was the predominant factor in the prosecutor's calculus.[12]

22 (4th Cir.1995); *Guzman v. State,* 85 S.W.3d 242, 244 (Tex.Crim.App.2002) (en banc) (collecting cases from federal and state courts).

**11.** As this court also explained in *(Leon) Robinson,* mixed motivation analysis should not be confused with the recognition of new and narrowly defined "suspect categories" or "cognizable groups" for equal protection purposes. *Id.* at 1284. Thus, the present case does not require us to decide whether "young black males" constitute a unique "cognizable group," and we do not do so. The critical question under *Batson* is not that, but simply whether the purposeful exclusion of young black males from jury service involves racial and/or gender discrimination.

**12.** In accordance with mixed motivation principles followed in other contexts, most courts have held it possible for a prosecutor to overcome a *Batson* challenge and save peremptory strikes tainted by racial or gender bias by proving that the same strikes would have been exercised for race-and gender-neutral reasons in the absence of the improper motive. *Howard,* 986 F.2d at 26, 30. Some courts have rejected this "affirmative de-

fense" as contrary to *Batson's* principles. *See McCormick v. State,* 803 N.E.2d 1108, 1113 (Ind.2004) (endorsing the strict view of some state courts that "regardless of how many other nondiscriminatory factors are considered, any consideration of a discriminatory factor directly conflicts with the purpose of *Batson* and taints the entire jury selection process") (internal quotation marks and citation omitted); *see also Wilkerson v. Texas,* 493 U.S. 924, 926, 927–28, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989) (Marshall, J., dissenting from denial of certiorari) ("A 'but for' test is inappropriate in the *Batson* inquiry ... because of the special difficulties of proof that a court applying that standard to a prosecutor's peremptory-challenge decisions necessarily would encounter.... A judicial inquiry designed to safeguard a criminal defendant's basic constitutional rights should not rest on the unverifiable assertions of a prosecutor who, having admitted to racial bias, subsequently attempts to reconstruct what his thought process would have been had he not entertained such bias."). As in *(Leon) Robinson,* "because the availability of an affirmative defense to a *Batson* violation is a question that is not before us in this case, we express no opinion on it." 878 A.2d at 1285 n. 21.

### 2. Prima Facie Case

■■■■ The Supreme Court has outlined a three-step procedure for trial courts to follow in evaluating a defendant's (or other party's) claims of unconstitutional discrimination in the exercise of peremptory challenges. *See (Leon) Robinson*, 878 A.2d at 1282–83. "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" *Johnson, supra* footnote 5, 125 S.Ct. at 2416 (quoting *Batson*, 476 U.S. at 93–94, 106 S.Ct. 1712). Second, if a prima facie showing is made, the burden shifts to the prosecutor (or other challenged party) to "give a clear and reasonably specific explanation of his legitimate reasons" for the strikes. *Batson*, 476 U.S. at 98 n. 20, 106 S.Ct. 1712 (internal quotation marks and citations omitted). Third, if the prosecutor tenders such reasons, the trial court must decide whether the defendant has proved purposeful racial or gender discrimination, a factual question that "comes down to whether the trial court finds the prosecutor's race-neutral [and gender-neutral] explanations to be credible." *Miller–El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

■■■■ The trial judge in this case rejected Robinson's *Batson* claim on the ground that Robinson did not succeed at the first step in making a prima facie showing of racial or gender discrimination. In asking us to remand for a full hearing on his claim, i.e., performance of step three, Robinson argues that whether he made the requisite prima facie showing at step one is now a moot point because the government proceeded anyway to step two by proffering non-discriminatory reasons for its strikes in a written filing. That action was not enough to render the first step moot, however. It is true that "[o]nce a prosecutor has offered a race-neutral [and gender-neutral] explanation for the peremptory challenges *and the trial court has ruled on the ultimate question of intentional discrimination*, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez, supra* footnote 7, 500 U.S. at 359, 111 S.Ct. 1859 (plurality opinion) (emphasis added); *see, e.g., Epps v. United States*, 683 A.2d 749, 752 (D.C.1996). Where the trial court has decided the ultimate issue of discrimination on the entire evidentiary record before it, our concern on appeal must be with the correctness of that decision; it would make no sense, for example, to overturn a correct finding of unlawful discrimination merely because the threshold showing that triggered the inquiry was less than adequate. But where, as here, the trial court has pretermitted the inquiry and not reached the ultimate issue, and has instead based its ruling solely on the lack of a prima facie showing, we have only that ruling to review, and notwithstanding the prosecutor's voluntary proffer, nothing has occurred to moot the ruling's operative significance.[13] *People v. Turner*, 8 Cal.4th

---

13. Robinson cites our statement in *Epps* that "when, in the absence of a prima facie showing, a party nonetheless defends against a *Batson* allegation and proffers race-neutral reasons for having removed a juror and does everything that would be required if the opposing party had in fact presented a prima facie case, the question of whether a prima facie showing has been made 'is no longer relevant.'" 683 A.2d at 752 (quoting *United* *States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). But the present case is not one in which the prosecutor did "everything that would be required" if Robinson had presented a prima facie case; while the prosecutor did proffer race-and gender-neutral reasons for his strikes, he did not—because a step three inquiry was aborted—submit to a testing of the genuineness of those reasons. In

137, 32 Cal.Rptr.2d 762, 878 P.2d 521, 535–36 (1994); *People v. Bowen,* 286 A.D.2d 645, 730 N.Y.S.2d 436 (N.Y.App.Div.2001). To hold otherwise would be to treat the prosecutor's proffer as a waiver by the government of the trial court's ruling in its favor, and thereby to deter prosecutors from making such proffers. If anything, however, such voluntary proffers should be encouraged, for even when the trial court rejects a defendant's *Batson* challenge for lack of a prima facie showing, it still may be desirable for the prosecutor contemporaneously to memorialize and disclose the reasons for his or her strikes. The cost of not doing so may be the outright reversal on appeal of the defendant's conviction, rather than a remand for the trial court to proceed to the third step of the *Batson* inquiry, in the event this court disagrees with the trial court's threshold ruling. *(Leon) Robinson,* 878 A.2d at 1290 (explaining that the belated third step inquiry "might still be feasible ... where the prosecutor voluntarily disclosed the reasons for his strikes in spite of the trial court's ruling and the record supports those reasons or otherwise allows them to be tested meaningfully").

▆▆▆▆▆ Turning, now, to the merits, our review of the trial judge's ruling is *de novo,* for whether a defendant has made out a prima facie case "is a question of law, namely, whether the voir dire record of the government's peremptory strikes, as shown by the defendant, raised 'the necessary inference of purposeful discrimination.'" *Little, supra* footnote 5, 613 A.2d at 885 (quoting *Batson,* 476 U.S. at 96, 106 S.Ct. 1712). The burden of establishing a prima facie case "is not onerous," *id.,* "and is satisfied by significantly less than a preponderance of the evidence." *(Leon)*

*Robinson,* 878 A.2d at 1283 (citing *Johnson, supra* footnote 5, 125 S.Ct. at 2417). "[R]easonable 'suspicions and inferences' that discrimination 'may have' occurred are enough to trigger the *Batson* inquiry." *Id.* (quoting *Johnson,* 125 S.Ct. at 2418). Thus, a prima facie case of discrimination may rest on "a wide variety of evidence," *Johnson,* 125 S.Ct. at 2416, notably including (though not limited to) the "pattern" of the prosecutor's strikes in light of the composition of the venire and "the prosecutor's questions and statements during voir dire examination and in exercising his challenges." *Batson,* 476 U.S. at 97, 106 S.Ct. 1712. In considering the pattern of the prosecutor's strikes, it is pertinent to consider both any statistical disparities and discriminatory impacts on the jurors, such as a disproportionate concentration of strikes against jurors of a particular race and/or gender, and any disparate treatment of jurors who are similar except for their race and/or gender. It is also pertinent to consider what, if any, information was elicited from and about the struck jurors by means of the voir dire and other preliminary inquiries. Other relevant circumstances may include the nature of the case and the race or gender of the defendant and other participants in the trial. *See generally (Leon) Robinson,* 878 A.2d at 1285–88.

According to Robinson, his prima facie case of mixed motive discrimination in the prosecutor's peremptory removal of Juror 627 rests on just two facts: (1) Juror 627 was the only person on the panel who was, like Robinson himself, a young black male (other than Juror 754, who Robinson conceded was struck for valid reasons); and (2) Juror 627 answered no questions during voir dire, so the prosecutor presumably

---

contrast, the trial court in *Epps* ruled on the ultimate question, finding that the strikes at

issue in that case were indeed discriminatory.

knew nothing about him other than his race, gender, age, place of employment, and residential address.[14] This is a bare bones showing; in our view it is too meager a showing, even by the lenient and flexible standard that we apply, to give rise to an inference that the prosecutor struck Juror 627 for reasons, in part, of race and/or gender.

By itself, the exercise of a single strike against the only prospective juror who was simultaneously young, black and male has little probative value; the numbers involved are too small to have statistical significance. Cf. Nelson v. United States, 601 A.2d 582, 591 (D.C.1991) (stating, in response to contention that prosecutor exercised two strikes to exclude young black males from the jury, that "[e]ven if age or gender were an improper basis for a peremptory challenge—issues which we do not here decide—we would be hard-pressed to find a Batson violation in the striking of only two out of ten prospective jurors"). This case is not comparable to (Leon) Robinson, where the prosecutor concentrated his strikes to exclude a total of six black females from the jury.[15] 878 A.2d at 1280, 1285. It is relevant that Juror 627 answered no questions during the voir dire, see id. at 1287, but the probativity of that fact is lessened in this case because, as Robinson is compelled to concede, the prosecutor was not entirely ignorant of salient information about the juror, such as his age, that might have justified the strike. See Jefferson v. United States, 631 A.2d 13, 16 n. 6 (D.C.1993) (recognizing that "there are many reasons why a particular venire member may be struck, and such reasons are not necessarily revealed by what that person does or does not say during voir dire"). Unlike (Leon) Robinson, this is not a case in which, "[s]o far as the record indicates, the prosecutor knew nothing" of potential consequence about the juror other than his race and gender. (Leon) Robinson, 878 A.2d at 1287. Cf. Morse v. Hanks, 172 F.3d 983, 985 (7th Cir.1999) (holding that a prima facie case was established where the prosecutor struck the only black juror in the venire and the "perfunctory" voir dire elicited no information that would have explained the strike).

In other respects, Robinson's showing plainly was insufficient. He points us to no pattern of strikes suggestive of racial or gender bias—no sign, for example, that the prosecutor exercised a disproportionate number of strikes against black male jurors generally, or that the prosecutor failed to strike similarly situated young jurors who were not black or male.[16] At

---

14. Robinson notes that he also "is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." Batson, 476 U.S. at 96, 106 S.Ct. 1712 (internal quotation marks and citation omitted). We take the point, though it does not inform our analysis significantly in this case.

15. We do not retreat from our statement that even one purposefully discriminatory strike is unconstitutional and, if proven, entitles the defendant to relief. It is a separate question whether the inference of purposeful discrimination can be drawn with respect to a single strike.

16. According to the government's Memorandum Regarding Peremptory Strikes, there was at least one young juror (a black female whose precise age was not stated) whom the government did not strike. Robinson might have strengthened his prima facie showing by pointing this fact out to the trial judge. (In its Memorandum, the government said it allowed this juror to remain on the jury for several reasons: "she was forthright when she answered questions at the bench and she appeared to be very thoughtful," "her godfather was a homicide detective and ... her mother was a police officer," and "[g]iven these relationships, the government felt that it was unlikely that she would bring to the jury any

trial, Robinson cited the fact that eight of the prosecutor's ten initial strikes were against potential jurors who were black, but that statistic signifies nothing unless it is compared to the proportionate representation of black jurors in the entire panel. *Jefferson,* 631 A.2d at 16 (explaining that knowledge of "the number of black persons challenged versus the number of white persons challenged [ ] can be relevant only when the court also has knowledge of the percentage of strikes used against a given group and also knowledge of the percentage that that group represented of the total venire panel—or, more precisely, of the percentage that that group represented of the prospective jurors actually called forward to be accepted or challenged") (internal quotation marks and citation omitted). Given that black jurors represented approximately two-thirds of the potential jurors in this case, and that this predominance was only enhanced by Robinson's peremptory strikes against most of the white jurors, it cannot be said that the prosecutor used his peremptory challenges disproportionately against black jurors. Nor, as the trial judge observed, was there a visible discriminatory impact against black jurors: their proportionate representation on the jury ultimately selected (ten of the twelve jurors were black) exceeded their representation in the venire. Statistical disparities of the magnitude we found in *(Leon) Robinson,* 878 A.2d at 1285, are absent here.[17] Other, alternative evidence indicative of bias or an intent to discriminate,

such as suspicious or "disparate questioning" by the prosecutor during voir dire, *Miller–El v. Dretke,* —— U.S. ——, ——, 125 S.Ct. 2317, 2334, 162 L.Ed.2d 196 (2005), is likewise missing here.

From the preceding discussion, we conclude as a matter of law that Robinson did not make out a prima facie case of purposeful discrimination against young black male jurors. Not much more would have been needed for a prima facie case to have been made, for the requirements of a prima facie case are comparatively modest. But on the facts presented to the trial judge, we hold that he committed no legal error in rejecting Robinson's *Batson* challenge at the threshold.

## II.

■ Although we uphold Robinson's convictions, we remand for re-sentencing. Pursuant to D.C.Code § 22–2404.1(b), (c) (1981),[18] the trial judge imposed enhanced sentences on each of the murder counts of life imprisonment without parole (LWOP) on the basis of aggravating circumstances, some of which were neither found by the jury nor coextensive with its verdicts. As the government concedes, re-sentencing therefore is required by our decision in *Keels v. United States,* 785 A.2d 672, 682–87 (D.C.2001), which construed the Supreme Court's opinion in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[19] On remand, the trial court must exercise its sentencing

preconceived negative views about police officers.")

**17.** This would be a different case had Robinson's trial counsel not conceded the propriety of the prosecutor's strike of Juror 754 and instead pointed out that the prosecutor had used 20% of his strikes (2 of 10) disproportionately to exclude young black males who constituted only 6% (2 of 32) of the potential

jurors. *See (Leon) Robinson,* 878 A.2d at 1285–86.

**18.** Section 2404.1 is codified now at D.C.Code § 22–2104.01 (2001).

**19.** The trial judge complied with the law as it stood at the time of Robinson's sentencing; the decisions in both *Keels* and *Apprendi* were issued subsequently.

discretion with the understanding that Robinson is eligible for LWOP based only on those aggravating circumstances that were coextensive with the jury's verdicts. *Keels,* 785 A.2d at 686–87.

Additionally, while the trial judge properly imposed a sentence on each count of which Robinson was found guilty, the felony murder convictions should be vacated on remand because they merge with their corresponding premeditated murder convictions. *See Thacker v. United States,* 599 A.2d 52, 63 (D.C.1991).

*So ordered.*