Edward L. ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CO–797.

District of Columbia Court of Appeals.

Argued Jan. 30, 2008.

Decided April 10, 2008.

David S. Petron, with whom Jeffrey T. Green was on the brief, for appellant.

Chrisellen R. Kolb, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III, Thomas J. Tourish, Jr., Michael D. Brittin, and John P. Mannarino, Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

KRAMER, Associate Judge:

This matter is before us for review of the sentence imposed upon appellant, Edward L. Robinson, following our remand for resentencing to permit the trial court to apply the principles articulated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The events underlying the sentence arise from appellant's involvement in the armed robbery and murder of Charles Hagler and the kidnaping and murder of Melissa Ankrom.[1] At the conclusion of his trial, Robinson was found guilty of two counts of first-degree felony murder while armed and two counts of first-degree premeditated murder while armed, as well as armed robbery, armed kidnaping and other related offenses. Pursuant to the First Degree Murder Amendment Act of 1992, codified at section 22–2104.01 of the District of Columbia Code, he was sentenced to life imprisonment without parole for the murders and lesser sentences for the other convictions.

In his first appeal, *see Robinson v. United States*, 890 A.2d 674 (D.C.2006), we concluded based upon the Supreme Court's holding in *Apprendi* that the matter must be remanded for re-sentencing because "the trial judge imposed enhanced sentences on each of the murder counts of life imprisonment without parole (LWOP) on the basis of aggravating circumstances, some of which were neither found by the jury nor coextensive with its verdicts." *Id.* at 685.[2] On this second appeal seeking review of the new sentences imposed, Robinson argues that the trial court erred in finding that aggravating factors "coextensive" with the jury's verdicts on the two counts of felony murder while armed provided a proper basis for the LWOP sentences. He also contends that a sentencing court may not rely upon vacated convictions to find the existence of aggravating factors. We affirm.

I

Robinson bases his argument that the trial court erred in using the felony-murder convictions to enhance the sentences for the premeditated-murder convictions on the position that the necessary facts underlying the felony-murder convictions,

1. The evidence at trial established that Robinson entered Hagler's car, telling him he would obtain drugs for Hagler to sell. Once in the car, the two picked up Ankrom, Hagler's fifteen-year-old, pregnant girlfriend. Robinson then shot Hagler seven times, causing the car to crash. Robinson attempted to shoot Ankrom, but his gun malfunctioned. He took Hagler's money and dragged Ankrom from the car, eventually driving her to Landover, Maryland. Robinson then solicited the help of his three accomplices to kill Ankrom, though she pleaded for her life and promised not to report Robinson's actions. These accomplices then bludgeoned her to death and dumped her corpse in a trash dumpster, but not before at least one of them raped her. When they returned to Landover, Robinson supplied his accomplices with drugs.

2. Specifically, the trial court had found that Ankrom's murder was committed during the course of a kidnaping and abduction, *see* D.C.Code § 22–2104.01(b)(1) (2001); was a murder for hire, *see id.* § 22–2104.01(b)(2); was heinous, atrocious and cruel, *see id.* § 22–2104.01(b)(4); and was done to make her unavailable as a witness against Robinson, *see id.* § 22–2104.01(b)(9). It also concluded that Hagler's murder was an atrocious and heinous act, *see id.* § 22–2104.01(b)(4); was committed during the course of commission of robbery, *see id.* § 22–2104.01(b)(8); and was a planned event, *see id.* § 22–2104.01(b)(11).

that is, that the felony murders were committed in the course of a robbery and a kidnaping, respectively, were not proven beyond a reasonable doubt at trial.[3] Moreover, he argues that the "coextensive inquiry" approach, approved by this court in *Keels v. United States*, 785 A.2d 672 (D.C.2001), violates the holdings of *Apprendi* and the Supreme Court's later case of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

In any event, Robinson argues, even if *Keels* is good law, because the felony-murder convictions were vacated at the conclusion of this second sentencing proceeding, the facts underlying those convictions are not available to serve as the predicate for the aggravating circumstances necessary for sentence enhancements, and accordingly, the trial court was required to sentence him to between thirty years and life and could not sentence him to life without parole. *See* D.C.Code § 22–2104(a) (2001 & Supp.2007). We hold that Robinson's felony-murder convictions, vacated on remand after the first appeal, *Robinson, supra,* 890 A.2d at 686, could properly be used as aggravating circumstances to enhance the penalty for first degree premeditated murder while armed to life without parole.

## II

The pertinent portion of the First Degree Murder Amendment Act of 1992, as amended, reads:

If a defendant is convicted of murder in the first degree, and if the prosecution has given the notice required under § 22–2104(a), a separate sentencing procedure shall be conducted as soon as practicable after the trial has been completed to determine whether to impose a sentence of more than 60 years [the statutory maximum provided absent this procedure] up to, and including, life imprisonment without possibility of release.

D.C.Code § 22–2104.01(a) (2001).[4] The Act lists twelve separate aggravating circumstances that would permit imposition of an LWOP sentence on a defendant convicted of murder in the first degree. Of those factors, only two are relevant here— a murder committed in the course of a robbery, *id.* § 22–2104.01(b)(8), and a murder committed in the course of a kidnaping, *id.* § 22–2104.01(b)(1).[5] Although the

---

**3.** At oral argument, counsel for Robinson expanded upon the meaning of this argument. Although counsel conceded that the jury had returned verdicts of guilty on the felony-murder counts, he argued that the verdicts on these counts were insufficient under *Apprendi* for sentence enhancement based on the aggravating circumstances listed in D.C.Code § 22–2104.01(b)(1), (8) (2001 & Supp.2007). As we understand his argument, this is because the verdict form did not specifically ask the jury whether it found beyond a reasonable doubt that appellant, in the course of the felony murders, had committed (a) a robbery, (b) a kidnaping (depending on the victim), (c) premeditated murder, (d) felony murder involving a kidnaping, and (e) felony murder involving a robbery. Robinson would have had the jury verdict form require that if the jury answered "yes" to these questions, it be required then to move on to answer, in accordance with the language of the aggravated sentencing statute, (f) whether "[t]he murder was committed in the course of kidnapping or abduction," with respect to Ankrom's murder, and (g) whether "[t]he murder was committed while committing or attempting to commit a robbery," with respect to Hagler's. *See* D.C.Code § 22–2104.01(b)(1), (8). As we explain, *infra*, the predicate factual findings required to answer questions (d) and (e), and those required to answer questions (f) and (g), respectively, are for *Apprendi* purposes—and in accordance with common sense—exactly the same.

**4.** There is no dispute that the required notice was given here.

**5.** Other aggravating factors are, for example, a murder that is "especially heinous, atrocious, or cruel," D.C.Code § 22–

Act itself does not require a finding of an aggravating factor to be made by a jury, *Apprendi* leaves no doubt that it must be.

In *Apprendi*, the Supreme Court addressed a sentencing procedure under a New Jersey hate crime statute that provided for an enhanced sentence if a trial judge found by a preponderance of the evidence that the crime was committed with the purpose of intimidating a person or group based on race. Apprendi pleaded guilty to possession of a firearm, an offense that carried a statutory penalty of five to ten years in prison. During the guilty plea proceeding, there was no mention of New Jersey's hate crime statute, nor any notice to Apprendi that the judge would be permitted to enhance his sentence beyond the statutory ten-year maximum if the judge found by a preponderance of the evidence that the defendant committed the crime to intimidate a person or group based on race. At sentencing, the judge found by a preponderance of the evidence that the underlying crime, which involved firing shots into the home of an African–American family, was done for the purpose of intimidating the members of the family because of their race. Based upon that finding, the judge sentenced Apprendi to a term of twelve years in prison, two years more than the statute

for the firearms offense alone would have allowed. 530 U.S. at 469–71, 120 S.Ct. 2348.

On certiorari, the Supreme Court noted that while judges historically have had—and continue to have—considerable discretion with respect to sentencing,[6] their discretion is bounded by the range of sentencing options prescribed by the statutes enacted by the legislatures. *Id.* at 481–82, 120 S.Ct. 2348. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. Anything less, it concluded, violates the Fifth Amendment's Due Process Clause and the Sixth Amendment right to a jury trial.[7]

The Supreme Court again addressed the issue of sentence enhancement that exceeds the statutory limit for a particular offense in *Blakely*, where the defendant was sentenced to thirty-seven months more than the statutory maximum set by the legislature for second-degree kidnaping with a firearm, the offense to which Blakely had pleaded guilty. The trial court based this sentence enhancement, which was. permitted by statute, on its finding, made following an evidentiary

---

2104.01(b)(4); a murder committed for hire, *id.* § 22–2104.01(b)(2); and a "murder [] committed because of a victim's race, color, religion, national origin, or sexual orientation," *id.* § 22–2104.01(b)(7).

**6.** The Court cited, inter alia, *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of

punishment to be imposed within limits fixed by law.").

**7.** It is undisputed that cumulative punishment through sentence enhancement, if authorized by the legislature, and, following *Apprendi*, based on facts proved to the fact-finder beyond a reasonable doubt, does not violate the Double Jeopardy Clause of the Constitution. *See Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

hearing conducted as part of the sentencing proceeding, that the defendant had acted with "deliberate cruelty." 542 U.S. at 299–301, 124 S.Ct. 2531.

The Supreme Court held that Blakely's sentence violated the Sixth Amendment right to a jury trial and overturned his conviction, reiterating *Apprendi's* holding that the "statutory maximum" for *Apprendi* purposes "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303, 124 S.Ct. 2531. The court went on to explain:

> In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Id.* at 303–04, 124 S.Ct. 2531 (quoting 1 J. Bishop, *Criminal Procedure* § 87, p. 55 (2d ed. 1872)).

We addressed *Apprendi* in *Keels v. United States,* 785 A.2d 672 (D.C.2001). There the defendant was convicted, inter alia, of felony murder committed in the course of an armed robbery and armed carjacking. *Id.* at 676. The facts involved the murder of a woman who died of "blunt force trauma" to her face, neck and skull, and who also appeared to have been sexually assaulted. *Id.* at 674. Before trial, the government put Keels on notice, as required by the First Degree Murder Amendment Act, that it would be seeking an LWOP sentence. As it does now, the statute provided that in determining whether to impose an LWOP sentence, "the court shall consider whether, beyond a reasonable doubt," any of the list of twelve aggravating factors was present. *See* D.C.Code § 22–2104.01(b). In accord with the statutory procedures, the court found three aggravating factors to be present: (1) that "[t]he murder was especially heinous, atrocious, or cruel," *see id.* § 22–2104.01(b)(4); (2) that "[t]he murder was committed while committing or attempting to commit a robbery, arson, rape, or sexual offense," *see id.* § 22–2104.01(b)(8); and (3) that "[t]he murder victim was especially vulnerable due to age or a mental or physical infirmity," *see id.* § 22–2104.1(b)(10). Having found these aggravating factors, the court imposed an LWOP sentence. *Keels, supra,* 785 A.2d at 676.

On appeal, Keels argued that this sentencing procedure—which involved the trial judge, not the jury, making the factual findings of aggravating factors that provided the predicate for the LWOP sentence—violated his constitutional right to a jury trial and was therefore prohibited by *Apprendi.* While we agreed that what is now section 22–2104.01 "could be interpreted along the lines proposed by Keels," we went on to recognize that "there are situations, such as the one presented here, where a jury, by arriving at its verdict, must have found (implicitly, if not explicitly) beyond a reasonable doubt one of the aggravating factors necessary to trigger the availability of LWOP under D.C.Code § 22–2[1]04.[0]1." *Id.* at 685. Based upon that possibility, we held that "[i]n situations where a jury makes a finding beyond a reasonable doubt *coextensive* with an aggravating factor contained in D.C.Code § 22–2[1]04.[0]1b), it fairly can be said that the sentence of LWOP is authorized by the jury verdict." *Id.* at 685.

*Keels* specifically explained what it meant by "coextensive" with an aggravating factor:

When the substantive legal inquiry for finding criminal culpability is identical to that required to establish a factor making the offender eligible for increased punishment, a jury's assessment that an offender has committed certain conduct beyond a reasonable doubt serves a dual purpose—to convict that offender of the crime and to establish the qualifying factor.

*Id.* Thus, "[i]n these situations, a trial judge imposing a sentence of LWOP is not acting unilaterally, but rather is determining eligibility for the increased sentence on the basis of a jury mandate in the form of a factual finding beyond a reasonable doubt." *Id.; see also Jones v. United States,* 828 A.2d 169, 179–81 (D.C.2003).

### III

■ Thus, the first issue we must resolve is whether the jury's verdicts finding Robinson guilty of felony murder in the course of a robbery and of felony murder in the course of a kidnaping were "coextensive" with the two corresponding aggravating factors: "murder [ ] committed in the course of kidnapping or abduction, or an attempt to kidnap or abduct," D.C.Code § 22–2104.01(b)(1) (2001 & Supp.2007), and "murder [ ] committed while committing or attempting to commit a robbery," *id.* § 22–2104.01(b)(8). The charge of felony murder has two elements: the first is that the defendant caused the death of the decedent (here, either Hagler or Ankrom), and the second is that this occurred while the defendant was committing or attempting to commit, among other crimes, a robbery or a kidnaping. *See* Criminal Jury Instructions for the District of Columbia, No.

4.23 (4th ed.1993). Since the jury here indisputably found Robinson guilty of both counts of felony murder, one involving a robbery and the other a kidnaping, it is self-evident that the jury found beyond a reasonable doubt that the aggravating factors that provide the predicate for sentence enhancement up to LWOP were present.

Robinson argues, however, that the "coextensive inquiry analysis of *Keels* ... is contrary to *Apprendi* and its progeny and should be disavowed." We disagree. In *Blakely,* written by Justice Scalia, the same Justice who wrote *Apprendi,* the Supreme Court explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303, 124 S.Ct. 2531.[8] This is precisely the same approach that we took in *Keels.* Because we conclude that the aggravating factors used by the court to enhance Robinson's sentence—that the murders were committed during a robbery and a kidnaping—were necessarily found by the jury in the course of finding him guilty of the two felony murders, we conclude that the result of the coextensiveness inquiry was correct, and that the trial court's procedure for enhancing appellant's sentence did not violate *Apprendi.*

### IV

■ Appellant's second argument for reversal is that the trial court could not rely on the felony-murder convictions to enhance his sentences because they had

8. *Cf. Washington v. Recuenco,* 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (holding that although trial court's firearm-specific sentence enhancement, based only on the jury's finding that respondent was armed with a "deadly weapon," was erroneous under *Ap-* *prendi* and *Blakely,* error would be harmless if it was determined on remand that, had the sentencing factor been properly submitted to the jury, the jury would have found the element proved beyond a reasonable doubt).

been vacated at our direction after the first appeal. *See Robinson, supra,* 890 A.2d at 686 ("[T]he felony murder convictions should be vacated on remand because they merge with their corresponding premeditated murder convictions.") (citing *Thacker v. United States,* 599 A.2d 52, 63 (D.C.1991)). In *Garris v. United States,* 491 A.2d 511 (D.C.1985), we explained that although the felony murder and robbery convictions in that case merged, requiring that one be vacated, "[m]erger is a legal fiction," and the fact that one conviction merged into another did not mean that there "was no robbery conviction on which [the defendant] could be sentenced," nor change the fact that the defendant "did both rob and murder the victim, factually two separate acts." *Id.* at 514. Similarly, while the merger rule prevents concurrent and consecutive sentences for what amounts to the same crime, *see Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), it in no way impinges on the legislature's ability to permit sentence enhancements based on defined circumstances so long as those enhancements are imposed in conformance with the dictates of *Apprendi.* Elimination of the convictions does not eliminate the legal force of the underlying circumstances found by the jury. Thus, Robinson's argument that vacating the convictions for felony murder after the first appeal prevented the trial court from relying upon the underlying facts found by the jury is without merit.

Accordingly, for the reasons stated herein, the judgment is

*Affirmed.*