Willis L. EPPS, Appellant,

v.

UNITED STATES, Appellee.

No. 94–CF–1088.

District of Columbia Court of Appeals.

Argued Nov. 28, 1995.

Decided Sept. 26, 1996.

Robert O. Goff, Manassas, VA, appointed by this court, for appellant.

Matthew G. Olsen, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and James Curt Bohling, Assistant United States Attorneys, were on the brief, for appellees.

Before FERREN, TERRY, and FARRELL, Associate Judges.

TERRY, Associate Judge.

Appellant Epps was convicted of distribution of cocaine and possession of cocaine with intent to distribute it, both in violation of D.C.Code § 33–541(a)(1) (1993). On appeal he contends that the trial court erred in finding that defense counsel had exercised his peremptory strikes in a racially discriminatory manner and in reinstating two of the stricken jurors as a remedy for the discrimination it found. We hold that the trial court's factual finding that defense counsel exercised his peremptory strikes in an improper, discriminatory manner is supported by the record. We also hold that the court's decision to restore the improperly stricken jurors to the jury panel as a remedy for defense counsel's discriminatory action was consistent with Supreme Court precedent. We therefore affirm the judgment of conviction.

I

Appellant and a juvenile accomplice were arrested after selling crack cocaine to two undercover police officers. His defense was, in essence, that he had not been involved in the sale, that he and a cousin just happened to be standing nearby when the sale took place, and that the juvenile had acted alone.

At appellant's trial, just before the *voir dire* began, the judge cautioned both the prosecutor and defense counsel against using their peremptory strikes in a discriminatory manner. The judge said, "If I do make an assessment of discriminatory strikes being exercised, those jurors who I conclude have been discriminatorily stricken, they will be re-empaneled, and I will give the strike back that you exercised regarding that person, and I won't permit the party who exercised that discriminatory strike to strike that particular person."

After twelve jurors and two alternates were seated in the jury box, defense counsel used the first five of his ten peremptory challenges[1] against white jurors. At that point, the judge said to defense counsel at the bench, "Sir, I will put you on notice that I do see a pattern, and if I do see a further pattern, I will have to force you to tell me why you are doing that." Moments later, when counsel exercised his sixth strike to remove another white juror, the prosecutor challenged the propriety of defense counsel's peremptory strikes under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Finding a *prima facie* case of discrimination, the judge recessed the proceedings and scheduled a hearing the next day to conduct a detailed *Batson* inquiry.

At the *Batson* hearing, the discussion focused mainly on defense counsel's[2] removal of jurors 370, 371, 321, and 290. Counsel initially claimed that he had struck juror 370, a young white woman, because "her mannerism" and the fact that she was a lawyer made it likely that she would give more weight to arguments by the government. He said that "her psychic [*sic*] did not lie in the best interest of my client.... And that's why I struck her." Asked by the judge for specific facts to buttress his claim, defense counsel stated that juror 370 worked for the government. The prosecutor immediately pointed out that juror 370 did not work for the

---

1. *See* Super. Ct.Crim. R. 24(b).

2. Appellant is represented by different counsel on appeal.

government but for a private law firm, Howrey & Simon. Defense counsel then asserted that working for a large law firm like Howrey & Simon disqualified juror 370 from jury service because her firm did not deal with "low income" people but with "people ... in authority positions, who make rules that guide this society." Asked again to cite facts to support this new claim, counsel said of Howrey & Simon, "They're not representing poor folks, Your Honor. Believe me." Questioning juror 370 directly, the judge discovered that she spent a quarter of her professional time working for the Washington Legal Clinic for the Homeless on a *pro bono* basis, and that a significant part of her work recently had been in a suit filed against the District of Columbia, seeking to enforce the law requiring the District to provide emergency shelter for the homeless. After chastising defense counsel for making "an assumption" about the juror's values, the judge nevertheless allowed juror 370 to be struck from the panel.

Defense counsel initially said that he struck juror 371, a forty-year-old white man, because of his "body language, the way he looked at the prosecutor." When the judge pressed him for a more substantial reason, counsel stated that because juror 371 was a manager, he would be predisposed to believe authority figures. Though denying that juror 371 had exhibited the body language alleged by defense counsel, the judge "accept[ed] the representation that because he is a manager ... he may be inclined to believe people in authority...." The judge concluded that this was a "sufficient nondiscriminatory reason" to strike the juror.

When asked to justify his strike of juror 321, a white woman, defense counsel replied, "I had noticed she was seventy-three years of age. Although I don't know where she lives, my feeling is that she probably does not live down around 11th Street, which is the, you know, lower areas...." Counsel asserted that because of her age "she would tend to—to give more weight to the testimony of a police officer as opposed to the defendant in this case." In response, the prosecutor called attention to the fact that jurors 30, 399, and 354, all of whom were black, had not

been struck despite the fact that they too were elderly. The judge took note of the fact that juror 321 lived in the 200 block of G Street, S.W., "which is a ... mixed neighborhood where a lot of low income people live...."

In explaining his strike of juror 290, another white woman, defense counsel said he had struck her for essentially the same reasons as juror 321. As a retiree and an elderly woman, counsel maintained, juror 290 was "probably worried about, you know, law and order ... someone breaking into her house," and would therefore "tend to give ... undue leeway" to the government. "Whatever the government says, they tend to believe that." As with juror 321, the prosecutor challenged defense counsel's explanation for striking juror 290, noting that other elderly persons who were black had not been struck.

After considering all of defense counsel's explanations, the judge said that counsel's reasons for striking jurors 321 and 290 were "highly suspect" and found that they had been struck from the panel solely because of their race:

> [B]ased upon the fact that there were three black people who are of similar age and who all are ... retired, whom counsel could have stricken and did not strike ... the only difference between the three people who were not stricken who are elderly and retired and the two people who were stricken ... is the fact that the ones that were stricken were white and the ones who were not stricken were black.

> And I can't discern any difference between those individuals other than race. Therefore, [in] reference to the last two individuals, 321 and 290, since the reason given is a reason that I just cannot credit, considering the other people who were not stricken, I have to conclude that the only basis for striking was because they were white, and the law does not authorize that.

Defense counsel objected at length to the finding of discrimination, asserting that the judge had ignored the race-neutral justifications for his strikes. The judge made clear, however, that although he had heard and understood what counsel had said, he found

that counsel's explanations were simply not credible:

> [T]he reasons you gave, counsel, I mean, they sound like the old reasons that were given in the deep south for denying [black people] jobs and working opportunities. They sound just like it.

A few moments later the judge added:

> [G]iven the reason you [have] given, I think anybody would have to conclude ... based upon the record that has been presented to me, that these two women were stricken for no other reason other than the fact that they are white. And the *Batson* decision and the subsequent decisions ... have all concluded that is an inappropriate reason to strike a juror.

Given an opportunity to explain further the reasons for his peremptory strikes, defense counsel cited studies by a noted psychiatrist and sociologist, Dr. Kenneth Clark, who (according to counsel) said that police officers treat white and black people differently. Counsel claimed it was important to "look at the socio-economic aspect of how a person would view one coming out of the background of—with money" when choosing jurors. Asked to explain how he knew that jurors 290 and 321 had money, counsel replied, "Well, I don't know. I don't know. I'm just doing it by how they appear to me. How—and their body language and what they say, how they say it.... I can only guess." The judge responded, "You guessed that somebody who happens to be white and elderly has money whereas you conclude that somebody who is black and elderly doesn't have money ... but your guesses seem to be based upon stereotypes that I think are deplorable."

The judge then reinstated jurors 290 and 321 on the jury panel as a remedy for defense counsel's discriminatory conduct. In doing so, the judge cited his obligation not only to safeguard the fairness of the jury selection process, but to protect the rights of individual jurors who were struck from the panel for improper reasons. "It doesn't do any good ... to send this panel out and call for another panel because that particular juror's right not to be discriminatorily stricken has not been vindicated." Having reinstated jurors 290 and 321 over defense counsel's protests, the court gave defense counsel two additional peremptory strikes, but he chose not to exercise them. The jury selection then resumed and continued to its completion.

## II

 It is firmly settled, both in the District of Columbia and throughout the nation, that peremptory strikes may not be based on race in either criminal or civil cases. *See Batson v. Kentucky, supra,* 476 U.S. at 89, 106 S.Ct. at 1719 (prosecutor's strikes); *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992) (defense strikes in criminal trials); *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 631, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991) (civil trials); *Safeway Stores, Inc. v. Buckmon,* 652 A.2d 597, 602 (D.C.1994). If it appears that a party is making such strikes in a discriminatory manner, any other party may raise the issue by making what has come to be known as a *Batson* objection. When that happens, the initial burden is on the party claiming discrimination to make a *prima facie* showing that the opposing party has exercised peremptory challenges on the basis of race. *Hernandez v. New York,* 500 U.S. 352, 358–359, 111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395 (1991); *Safeway Stores,* 652 A.2d at 602. If the trial court concludes that such a *prima facie* showing has been made, then the burden shifts to the striking party to justify the peremptory challenges on race-neutral grounds. *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866. But when, in the absence of a *prima facie* showing, a party nonetheless defends against a *Batson* allegation and proffers race-neutral reasons for having removed a juror and does everything that would be required if the opposing party had in fact presented a *prima facie* case, the question of whether a *prima facie* showing has been made "is no longer relevant." *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983), cited with approval in *Hernandez,* 500 U.S. at 359, 111 S.Ct. at 1866; *accord, Safeway Stores,* 652 A.2d at 602.

Here appellant claims that the government never met its initial burden of making a *prima facie* showing of discrimination. We need not entertain this claim of error. Without having called attention below to the purported absence of a *prima facie* case, defense counsel chose instead to offer to the court race-neutral reasons for his peremptory strikes and engaged the trial court in an extended dialogue about the veracity of his reasons. Because defense counsel did everything he would have been required to do had a *prima facie* showing been made, the question of whether such a showing was in fact made is moot.

### III

In *Hernandez v. New York, supra,* the Supreme Court stated that "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." 500 U.S. at 364, 111 S.Ct. at 1868. Reading this statement in conjunction with our well-established standard of review, this court may reverse a trial court's finding of fact on the existence or non-existence of discriminatory intent only when that finding "is plainly wrong or without evidence to support it." D.C.Code § 17–305(a) (1989).

In undertaking a *Batson* inquiry, the trial court must "rigorously scrutinize[ ] the ... race-neutral explanations" offered to rebut the allegation of discrimination; if it fails to do so, "*Batson*'s promise of eliminating racial discrimination in jury selection will be an empty one." *Tursio v. United States,* 634 A.2d 1205, 1211 (D.C.1993). The court must decide whether counsel's explanation is to be believed, *Hernandez,* 500 U.S. at 365, 111 S.Ct. at 1869, and its evaluation of credibility in this area is "entitled to great deference." *Tursio,* 634 A.2d at 1210. We have adopted, in particular, the view of the Illinois Supreme Court that "explanations which focus upon a venireperson's body language or demeanor must be closely scrutinized because they are subjective and can be easily used ... as a pretext for excluding persons on the basis of race." *People v. Harris,* 129 Ill.2d 123, 176,

544 N.E.2d 357, 380, 135 Ill.Dec. 861, 884 (1989) (citation omitted), quoted in *Tursio, supra,* 634 A.2d at 1213 n. 7.

In this case, defense counsel made repeated reference to "body language" to explain his peremptory strikes. In deciding whether to accept counsel's explanation, the trial judge had to make an assessment of his credibility, and he did not mince words. The judge bluntly stated that counsel's explanations did not "sound right" and did not "smell right." Without accusing counsel of being racist, the judge nevertheless found his explanations wanting: "The pattern I see does indicate the intent to strike all the whites from this jury panel. And the law clearly says that is not acceptable...." As a direct observer of defense counsel's conduct and demeanor, the trial judge was in a unique position to determine his credibility. The judge's finding is one that this court cannot make and, given the record before us, cannot overturn.

### IV

Appellant claims that even if the trial court was justified in concluding that the removal of jurors 290 and 321 violated *Batson* and its progeny, the reinstatement of those jurors was improper. He contends that the exclusive remedy for irregularities in the empaneling process must be found in D.C.Code § 11–1910 (1995). We do not agree.

D.C.Code § 11–1910 is part of a longer statute governing the selection of jurors in the Superior Court.[3] Section 11–1910(a) states:

A party may challenge the composition of a jury by a motion for appropriate relief. A challenge shall be brought and decided before any individual juror is examined, unless the Court orders otherwise. The motion shall be in writing, supported by affidavit, and shall specify the facts constituting the grounds for the challenge. If the Court so determines, the motion may be decided on the basis of the affidavits filed with the challenge. If the Court orders trial of the challenge, witnesses may

3. District of Columbia Jury System Act, Pub.L. No. 99–650, 100 Stat. 3635 (1986).

be examined on oath by the Court and may be so examined by either party.

Section 11–1910 follows other Code sections that describe the jury system plan,[4] the master juror list,[5] general qualifications for jury service,[6] the process of summoning jurors,[7] and the grounds for being excused or deferred from jury service.[8] We conclude from the position of section 11–1910 in the Code, and from its focus on challenging "the composition of a jury," that section 11–1910(a) is designed mainly to deal with deficiencies in the machinery that selects jurors from the general population. It does not provide the means for a *Batson*-based challenge to a peremptory strike.[9]

■ But even assuming that it does and that litigants must rely on section 11–1910 to remedy a *Batson* violation, immediate reinstatement of a stricken juror is not precluded. Subsection (b) of section 11–1910 states:

If the Court determines that in selecting a grand or petit jury there has been a substantial failure to comply with this chapter, the Court shall stay the proceedings pending the selection of a jury in conformity with this chapter, quash the indictment, *or grant other appropriate relief.* [Emphasis added.]

In this case the trial court chose to "grant other appropriate relief" by immediately reinstating the jurors that had been improperly stricken. We see no reason to exclude such reinstatement from the definition of "appropriate relief."

Moreover, subsection (c) states in part:

Nothing in this section shall preclude any person from pursuing *any other remedy,* civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race.... [Emphasis added.]

4. D.C.Code § 11–1904.

5. D.C.Code § 11–1905.

6. D.C.Code § 11–1906.

7. D.C.Code § 11–1907.

8. D.C.Code §§ 11–1908 and 11–1909.

The government being the "person" asserting the right against discrimination in a *Batson* situation, *Georgia v. McCollum, supra,* 505 U.S. at 56, 112 S.Ct. at 2357, the immediate reinstatement of an improperly stricken juror may be considered as an appropriate "other remedy" to vindicate that juror's right.

■ Finally, we turn to the question of whether the *sua sponte* re-empaneling of the two jurors was a permissible and proper remedy for counsel's *Batson* violation. We hold that it was.

The Supreme Court has stated that race-based peremptory strikes harm potential jurors by denying them "the honor and privilege of participating in our system of justice." *Edmonson v. Leesville Concrete Co., supra,* 500 U.S. at 619, 111 S.Ct. at 2082. Though a potential juror has no "right to sit on any particular petit jury ... he or she does possess the right not be excluded from one on account of race." *Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991). A court that tolerates a discriminatory act by counsel not only makes itself a party to that act, but effectively "place[s] its power, property and prestige behind the ... discrimination." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961).

Though expressing "no view" on an appropriate remedy for a *Batson*-type violation, the Supreme Court has recognized two possible courses of action: (1) discharging the venire and selecting a new jury from a panel not previously associated with the case, and (2) canceling the discriminatory strikes and resuming jury selection with the improperly stricken jurors reinstated on the jury. *See Batson, supra,* 476 U.S. at 99–100 n. 24, 106 S.Ct. at 1725 n. 24 . A number of courts have employed the second remedy to deal with

9. In contrast to the requirement in section 11–1910(a) that challenges to jury composition "be brought and decided before any individual juror is examined," this court has held that "a *Batson* motion will be timely when made at any time before the jury is sworn." *Tursio, supra,* 634 A.2d at 1209.

discriminatory peremptory strikes.[10] When an apparent *Batson* violation occurs, moreover, this court has deemed it "preferable for counsel to object as soon as a discriminatory pattern emerges so that the selection process can go forward ... otherwise, voir dire and the lengthy jury selection process may have to be repeated with a new venire." *Tursio, supra,* 634 A.2d at 1210.

In approving the remedy selected by the trial court in this case, we are not faced with a concern that sometimes arises when the reinstated jurors have been tainted by the *Batson* inquiry. Appellant made no showing that either of the reinstated jurors even knew she had been struck from the panel or that she harbored any animus toward the defense as a consequence of having been a victim of discrimination. We leave for some future case the choice of remedy when potential jurors victimized by discrimination are personally aware that their rights have been violated. *See State v. McCollum,* 334 N.C. 208, 235, 433 S.E.2d 144, 159 (N.C.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2784, 129 L.Ed.2d 895 (1994).[11] In this case the court determined that it had an obligation to vindicate the right of two persons to be free from discrimination when carrying out their civic duty as jurors. Because these jurors had not been tainted by the *Batson* inquiry (and probably were not even aware of it), the

vindication of their rights came at no undue cost to appellant.

Racial discrimination has no place in the courtroom. *See Edmonson, supra,* 500 U.S. at 630, 111 S.Ct. at 2088. The trial judge was quick to detect a *Batson* violation and moved swiftly and decisively to remedy it. We find no error whatsoever in his actions. The judgment of conviction is

*Affirmed.*

---

10. *See United States v. Forbes,* 816 F.2d 1006, 1011 (5th Cir.1987) (*Batson* violation "is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson"); *Ellerbee v. State,* 215 Ga.App. 312, 317, 450 S.E.2d 443, 448 (1994) ("the trial court had the constitutional power to seat an individual juror determined to have been challenged in violation of *Batson* "); *Jones v. State,* 105 Md.App. 257, 274, 659 A.2d 361, 369, *cert. granted,* 340 Md. 649, 667 A.2d 897 (1995) ("the proper approach is to permit the trial court to determine, in its discretion, whether a wrongfully excluded juror should be stricken altogether from the venire or should be reseated"); *State v. Grim,* 854 S.W.2d 403, 416(Mo.), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993) ("the proper remedy for [a *Batson* violation] is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury"); *People v. Irizarry,* 165 A.D.2d 715, 718, 560 N.Y.S.2d 279, 281 (1990) ("The appropriate response by the court ... would have been the recalling and reseating of the challenged juror for further inquiry"); *State ex rel. Curry v. Bow-*

*man,* 885 S.W.2d 421, 425 (Tex.Cr.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994) ("where a *Batson* claim is sustained, the court may fashion a remedy in its discretion," including reinstatement of the stricken jurors). *But see People v. Wheeler,* 22 Cal.3d 258, 282, 583 P.2d 748, 765, 148 Cal.Rptr. 890, 906 (1978) (proper remedy is to dismiss entire venire and begin anew because "the complaining party is entitled to a random draw from an entire venire"), cited in *People v. Smith,* 21 Cal.App.4th 342, 345, 25 Cal.Rptr.2d 850, 851 (1993).

11. The court observed in *McCollum:*

To ask jurors who have been improperly excluded from a jury because of their race to then return to the jury to remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice toward either the State or the defendant, would be to ask them to discharge a duty which would require near superhuman effort. . . .
334 N.C. at 236, 433 S.E.2d at 159.