# District of Columbia
# Court of Appeals

**No. 14-CF-400**



DAVID J. BROWN,

Appellant,

v.

**CF2-3587-12**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: Blackburne-Rigsby and Thompson, Associate Judges; and Reid, Senior Judge.

## J U D G M E N T

This case came to be heard on the transcripts of record, the briefs filed, and was argued by counsel. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of the trial court with respect to the conviction of Receiving Stolen Property ("RSP"), relating to Martha Bass, is affirmed. The trial court's judgment, both as to the RSP conviction regarding Mary Register, and the trafficking conviction are reversed. The case is remanded for re-sentencing.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: December 10, 2015.

Opinion by Senior Judge Inez Smith Reid.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-400

DAVID J. BROWN, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED   12/10/15
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-3587-12)

(Hon. John McCabe, Trial Judge)

(Submitted November 10, 2015                    Decided December 10, 2015)

*Cecily E. Baskir* was on the brief for appellant.

*Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, *Thomas P. Swanton*, and *Jay Apperson*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY and THOMPSON, *Associate Judges*, and REID, *Senior Judge*.

REID, *Senior Judge*: After a jury trial, appellant David J. Brown was convicted of two counts of Receiving Stolen Property ("RSP"), in respect to two iPhones belonging to Martha Bass and Mary Register, in violation of D.C. Code §§ 22-3232 (a) -3232 (c)(2) (2001), and one count of Trafficking in Stolen Property

("Trafficking"), in violation of D.C. Code § 22-3231 (2001). For the reasons stated below, we affirm Mr. Brown's RSP conviction with regard to Ms. Bass's iPhone, but we reverse his RSP conviction with respect to Ms. Register's iPhone and, as a result, his conviction for trafficking must also be reversed. We remand the case for re-sentencing.

## FACTUAL SUMMARY

The government presented evidence that on November 11, 2011, Officer Sang Im and Detective George Singletary received a dispatch reporting a robbery in the 1100 block of North Capitol Street; each responded to the call and spoke to Martha Bass, the complainant. A security guard was also present with Ms. Bass. Ms. Bass told the police officers what had happened and then called her friend, Brittany Trewin. At the time of trial, Ms. Bass was out of the country and Ms. Trewin, one of her housemates at the time of the robbery, testified that Ms. Bass called her, "seemed excited and a little frazzled," "was talking rapidly," and said that she had been walking down the street when someone grabbed her cellphone; she had chased him but the robber ran behind a building. A security guard saw the chase and assisted Ms. Bass in calling the police. Ms. Bass asked Ms. Trewin to help her locate the phone using her computer and the phone's GPS software.

Ms. Trewin was able to locate the phone, and Officer Im and Detective Singletary proceeded to the location, an electronic repair store. Officer Im and Detective Singletary knocked on the door and Mr. Brown responded.[1] The officers explained that they had reason to believe that a stolen iPhone was inside the store. Mr. Brown went to a service counter, typed something on the computer, walked to the back of the store and returned with an iPhone asking, "is this what you're looking for[?]" Ms. Bass later identified the phone as hers.

Detective Singletary asked Mr. Brown when he had received the phone, to which Mr. Brown replied that his son had received the phone from someone earlier that day.[2] When the officer asked for an invoice for the iPhone, Mr. Brown printed out an invoice. Detective Singletary noticed a time-print on the invoice and asked

---

[1] Officer Singletary also testified at the hearing on Mr. Brown's motion to suppress statements and tangible evidence. As he was knocking on the door of the "12 Volt Mobile Electronic Store," Officer Im looked through the clear glass door of the store and "noticed … some people leaving out of the rear of the store." At trial, Officer Im testified that he and Officer Singletary "walked in" when they arrived at the store; the prosecutor did not ask what, if anything, he saw when he arrived at the door. During his trial testimony, Officer Singletary stated that before Mr. Brown came to the door, other officers on the scene informed him that "someone actually left out of the back of the location."

[2] At the hearing on Mr. Brown's motion to suppress statements and tangible evidence, Officer Singletary testified that Mr. Brown told him that someone may have brought the phone in "for servicing" because his store "repair[ed] phones all the time."

if that time reflected when the invoice was made. Mr. Brown explained that it was when the invoice was printed. About 10 minutes later, Officer Im asked for a second copy of the invoice. Mr. Brown printed another copy and it contained the same time-print as the first.

Mr. Brown was placed under arrest, at which point he admitted to having created the invoices, saying "I created the invoice to protect the interest of the business." Mr. Brown said he knew the individual who had brought the iPhone to the store and would help the police catch the person if they did not arrest him (Mr. Brown). Detective Singletary asked Mr. Brown for the name of the individual who had brought in the phone, but he did not respond. Detective Singletary later attempted to contact Mr. Brown for information on the person's identity, but Mr. Brown never returned his calls.

On December 2, 2011, the police executed a search warrant of the store; Mr. Brown was present. During the search, police recovered multiple items, including an iPhone belonging to Mary Register. Ms. Register testified that her iPhone had been stolen out of her hand, on Massachusetts Avenue, on October 19, 2011.

Mr. Brown's brother, Sean Brown, testified for the defense. He worked in the store and was often "in and out" in November and December of 2011. "[A] bunch of people" worked out of the store doing various things like working on equipment, changing screens on laptops and repairing phones. He assumed these people paid rent and guessed that his brother was there more than anyone else and might own the store, as he would open it up. He further testified that there were no bins for people to put their items in and things got mingled. In one instance, he got into a dispute with someone else at the store over the ownership of a computer.

Officer Shawn Rooney, a foot beat officer, testified as a rebuttal witness for the government. He would walk by the store every day and see Mr. D. Brown inside, sometimes with a customer or relative. On a few occasions, perhaps three to seven times, Officer Rooney went into the store and spoke to him. Officer Rooney believed Mr. D. Brown owned the store and everything in it.

**ANALYSIS**

### *The Prosecutor's Exercise of Peremptory Strikes*

Mr. Brown claims that the trial judge "erred when he concluded that none of the prosecutor's six strikes against African-Americans were made with an improper discriminatory purpose." The factual context for the peremptory strikes shows the following. During the *voir dire*, the prosecutor used seven peremptory challenges; six were used to strike black jurors. Defense counsel raised a *Batson*[3] claim, and the prosecutor proffered the following reasons for striking the jurors: Juror 984 (black male) because he did not look at the prosecutor, was only twenty-three years old, and worked at odd jobs; Juror 784 (black male) because he did not engage with the prosecutor, was young, and was unemployed; Juror 589 (black female) because she had been charged with a misdemeanor offense; Juror 402 (black female) because she did not give the prosecutor a friendly look and because she worked in the legal field and made a comment that she had a view as to what the law should be; Juror 971 (black male) because he looked at defense counsel and said hello to him but not to the prosecutor; and Juror 405, an alternate, (black female) because she was a seventy-year old housekeeper and had previously served

---

[3] *Batson v. Kentucky*, 476 U.S. 79 (1986).

on a jury that was a hung jury. The final jury included five white women, three white men, three black women and one black man in addition to one black man and one white man as alternates. The trial judge concluded that there was no discriminatory purpose in the prosecutor's use of peremptory challenges.

We are guided by the following legal principles. A trial court's *Batson* ruling "must be sustained unless it is clearly erroneous" recognizing "that these determinations of credibility and demeanor lie peculiarly within a trial judge's province." *Johnson v. United States*, 107 A.3d 1107, 1112-13 (D.C. 2015) (citations and quotations omitted). In *Batson* the Supreme Court required a three-part inquiry into whether a prosecutor engaged in purposeful discrimination during jury selection: first, the defendant must make a prima facie case of racial discrimination; second, the burden shifts to the prosecution to provide a race-neutral explanation; and third, the trial court must determine whether the defendant has proved purposeful racial discrimination. *Id.* at 1111; *Smith v. United States*, 966 A.2d 367, 373-74 (D.C. 2009) *as amended on reh'g* (May 14, 2009).

While the burden of producing evidence shifts during a *Batson* inquiry, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Johnson*, *supra*, 107 A.3d at 1111 (citation

and quotation omitted). In order to meaningfully rebut the prosecution's race-neutral explanations, the defense must "(1) point out that the prosecutor's claims about the particular juror are false; (2) point out that although the prosecutor's claims about an excluded juror are true, similar claims can be made about non-excluded jurors who are not minorities, which should raise the suspicion of bad faith"; or "(3) argue that claims about the juror, although true, are so irrational as a reason for striking a juror that they might be pretexts for some undisclosed discriminatory reason." *Robinson v. United States*, 878 A.2d 1273, 1290 (D.C. 2005) (citations and quotations omitted); *see also Smith v. United States*, 966 A.2d at 387. Defense counsel's offer of "'conclusory assertions' that the prosecutor's reasons appeared to be disingenuous" would be insufficient to meet this burden. *Smith*, *supra*, 966 A.2d at 387.

Mr. Brown asserts that the trial judge erroneously ruled that the prosecutor's strikes of prospective jurors were not racially motivated. Defense counsel attempted to meaningfully rebut the prosecutor's proffered race-neutral explanations with respect to Juror 589, whom the prosecutor struck because she had a prior misdemeanor offense. Defense counsel argued that at least three individuals with some involvement with the criminal justice system, and therefore similarly placed as Juror 589, had not been struck by the prosecutor: Juror 686 had

a brother convicted of a misdemeanor in Chicago; Juror 140 had been the victim of a house burglary; and Juror 415 had a cellphone stolen. However, being a victim of a crime is significantly different from being charged with or suspected of a crime and is sufficient to distinguish Juror 589 from Jurors 140 and 415. Jurors 140 and 415 were also asked during *voir dire* how they felt about the police response to the crimes against them, and they both stated that the police response was appropriate. Similarly, being convicted of a crime is significantly different from having a family member convicted, particularly a family member in a different state, and that difference distinguishes Juror 589 from Juror 686.

In response to the prosecutor's race-neutral reasons for striking the remaining five black jurors, defense counsel merely made "conclusory statements" that most of the prosecutor's strikes were against black people.[4] We therefore conclude that Mr. Brown did not meet his burden under *Batson* to materially rebut the race-neutral explanations of the prosecutor.

---

[4] The government argues that Mr. Brown "challenged only the government's explanation for striking juror 589," but our review of the record convinces us that Mr. Brown also challenged the prosecutor's strikes of other black jurors, albeit not in as much detail.

Mr. Brown further argues that explanations proffered by the prosecutor "which focus upon a person's body language or demeanor must be closely scrutinized because they are subjective and can be easily used [] as a pretext for excluding persons on the basis of race." *Epps v. United States*, 683 A.2d 749, 753 (D.C. 1996) (citation and quotation omitted). However, this does not negate the defense counsel's burden of persuasion. Furthermore, in ruling on a *Batson* challenge, a trial judge "is not required to make detailed findings of fact or to give a detailed explanation." *Johnson*, *supra*, 107 A.3d at 1113. As long as the trial judge allows the parties an opportunity to make their claims, "he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance." *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006), cited in *Smith*, *supra*, 966 A.2d at 382. The judge in this case found, after considering the parties' assertions, "the original venire, the composition of the 14 [jurors] that remain," and "the race of those who remain on the jury" that none of the strikes were made for an improper discriminatory purpose. In coming to this decision, the trial judge "implicitly found that the prosecution's proffered nondiscriminatory reasons were credible" and "[n]o further fact-finding was required." *Smith*, *supra*, 966 A.2d at 382 (citing *Smulls v. Roper*, 535 F.3d 853, 861 (8th Cir. 2008)). We therefore discern no trial court error.

### *The Admission of Ms. Bass's statements as Excited Utterances*

Mr. Brown claims that the trial court "improperly admitted [Ms.] Bass's statements over the telephone to her friend [Ms.] Trewin as present sense impressions," and he argues that the statements also were "erroneously admitted" as "an excited utterance." This court reviews a trial court's legal ruling on the admissibility of hearsay evidence *de novo*; the factual findings are reviewed under the clearly erroneous standard. However, we are also guided by an abuse of discretion standard. *Odemns v. United States*, 901 A.2d 770, 776 (D.C. 2006).

The trial court found that Ms. Bass "appeared upset, nervous, loud, [and] was almost crying" when she spoke with Officer Im. The court credited Ms. Trewin's testimony that "she had known Ms. Bass for several years" and that Ms. Bass is "generally a pretty calm person but that . . . when [Ms. Bass] called [Ms. Trewin] on the telephone, she . . . seemed frazzled and was speaking quickly." The judge reviewed this court's decision in *Castillo v. United States*, 75 A.3d 157 (D.C. 2013), and concluded that Ms. Bass's statements were properly admitted as an excited utterance exception to the hearsay rule; specifically with reference to the requirement of a temporal relationship between the startling event (the robbery) and Ms. Bass's statements to Ms. Trewin during the phone call, the court found

that the timeframe was "certainly less than 30 minutes but more likely closer to 15 or 20 minutes."[5]

Because the issue can be resolved on the basis of harmless error, we do not determine whether the trial court abused its discretion in admitting Ms. Bass's statements through Ms. Trewin under the excited utterance exception to show that Ms. Bass's iPhone had been stolen. The testimony of Officer Im and Detective Singletary similarly established that Ms. Bass's phone had been stolen and therefore Ms. Trewin's testimony was not required to establish this point. In short, even if we assume error, the RSP judgment as to Ms. Bass's iPhone would not have been "substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765; 66 S. Ct. 1239, 1248 (1946).

### *Sufficiency of the Evidence*

Mr. Brown claims that there was insufficient evidence at trial to support his convictions for RSP and trafficking. In particular, he argues there was insufficient

---

[5] But see *Mayhand v. United States*, No. 13-CF-1295, 2015 D.C. App. LEXIS 276, at \*11-14 (D.C. July 9, 2015). The trial court did not make an explicit ruling on whether Ms. Bass's statements could also be admitted under the present-sense exception to the hearsay rule.

evidence to prove that: (1) he had knowledge and constructive possession of Ms. Register's phone or knew that it was stolen; and (2) he knew or had reason to believe that Ms. Bass's phone was stolen before the police told him that it was. The government claims that Mr. Brown waived the constructive possession argument by not raising it at the time of his motion for judgment of acquittal, but that if he did not waive the argument, the sufficiency of evidence claim should be reviewed only for plain error.

At trial, Mr. Brown made a motion for judgment of acquittal at the close of the government's case, but there is a dispute as to whether counsel failed to renew that motion at the close of all the evidence. The government submits, citing *Noaks v. United States*, 486 A.2d 1177, 1178-79 (D.C. 1985), that if Mr. Brown failed to renew his motion, this court should not disturb the decision of the trial court unless there was manifest error or serious injustice. However, in *Washington v. United States*, 475 A.2d 1127, 1128-29 (D.C. 1984) (per curiam), we said that, "appellant's failure to renew her motion for judgment of acquittal waives review of the denial of that motion but does not foreclose review of the sufficiency of the evidence. It simply requires that the scope of our review be expanded to include

*all* of the evidence."[6] *Id*. at 1129. Our recent case law confirms that failure to renew a motion for a judgment of acquittal "does not foreclose review of the sufficiency of the evidence." *Ramirez v. United States*, 49 A.3d 1246, 1249 n.3 (D.C. 2012); *Sutton v. United States*, 988 A.2d 478, 482 (D.C. 2010).

The applicable standard of review for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (citations and quotations omitted). This standard requires "more than that there must be some relevant evidence in the record in support of each essential element" of the charge, and "the fact that evidence is relevant does not automatically make it sufficient to support a criminal conviction." *Id*. at 134.

---

[6] When presented with any inconsistency between *Noaks* and *Washington*, this court has clearly found that, "[t]o the extent, if any, that *Noaks* is inconsistent with our holding in *Washington*, we believe that *Washington* controls." *Wheeler v. United States*, 494 A.2d 170, 172 (D.C. 1985).

We hold that the evidence was sufficient to convict Mr. Brown of RSP of Ms. Bass's iPhone beyond a reasonable doubt.[7] Given the officers' testimony and that of Ms. Trewin, it is clear that on the same day that Ms. Bass's phone was stolen, it was located in the electronic repair store. Mr. Brown opened the door of the store when the officers arrived, retrieved the phone, admitted he knew it was stolen, and knew the person who brought it to the store; he insisted that he would help the officers catch the person if they did not arrest him (i.e., Mr. Brown). In

---

[7] At the time of the RSP charges in this case, D.C. Code § 22-3232 (a) provided, "A person commits the offense of receiving stolen property if that person buys, receives, possesses, or obtains control of stolen property, knowing or having reason to believe that the property was stolen." *See also Banks v. United States*, 902 A.2d 817, 819 (D.C. 2001) (per curiam) ("To convict appellants of felony receipt of stolen property, the government had to prove (1) that they bought, received, possessed, or obtained control of stolen property; (2) knowing or having reason to believe that the property was stolen; and (3) that the value of the property was $250 or more.") (citing D.C. Code §§ 22-3232 (a) & (c)(1) (2001)); *Lihlakha v. United States*, 89 A.3d 479, 483-84 (D.C. 2014) (government must prove that defendant "received, possessed, or obtained control of the [stolen] property"). Section 22-3232 was amended in 2011 (by D.C. Law 19-120, effective April 20, 2012) to cover situations where law enforcement officers conduct a "sting" operation, offering suspects "stolen goods" for sale even though they have not been stolen. To avoid the defense of impossibility to an RSP charge, the Council added subsection (d) providing in part that, "[T]he term 'stolen property' includes property that is not in fact stolen if the person who buys, receives, possesses, or obtains control of the property had reason to believe that the property was stolen." *See* Committee on the Judiciary, Report on Bill 19-215, "Receiving Stolen Property and Public Safety Amendment Act of 2011, October 11, 2011," at 1-2, 5-6; *see also* "Receiving Stolen Property and Public Safety Amendments Emergency Amendment Act of 2011," § 102; the emergency act expired on March 20, 2012.

short, the government presented compelling evidence of Mr. Brown's guilt as to the RSP charge relating to Ms. Bass's iPhone.

However, we conclude, as Mr. Brown contends, that the evidence was insufficient to prove Mr. Brown's guilt as to the RSP charge pertaining to Ms. Register's phone. Initially, the government argues that Mr. Brown did not renew his motion for judgment of acquittal "after the presentation of his case or at the conclusion of all evidence," and therefore must show "manifest injustice" or "serious error"; and further, that he failed to make his constructive possession argument in the trial court, and hence, we must apply the plain-error standard.

The record shows that at the specific request of the trial court, Mr. Brown renewed his motion before formally resting and prior to the government's rebuttal witness. Under these circumstances we are satisfied that Mr. Brown renewed his motion and the "manifest injustice" or "serious error" principle does not apply. Even assuming that accommodating the trial court's request meant that Mr. Brown technically did not renew his motion at the proper time, our case law nevertheless permits review. *See Washington*, *supra*, 475 A.2d at 1128-29. Furthermore, when Mr. Brown made his motion at the close of the government's main case, his introductory statements were, "Defense moves for a judgment – directed verdict, a

judgment on the pleadings," and in relation to the count pertaining to Ms. Register, "we have no evidence."[8] We believe the general statements were sufficient to embrace the constructive possession argument, since the government had to prove that Mr. Brown received, possessed or obtained Ms. Register's stolen iPhone. *See Newby v. United States*, 797 A.2d 1233, 1238 (D.C. 2001) ("Even though a general motion for acquittal is broadly stated, without specific grounds, it is deemed sufficient to preserve the full range of challenges to the sufficiency of the evidence.") (internal quotation marks omitted); *Banks*, *supra*, 902 A.2d at 819.

At any rate, we hold that the government failed to introduce sufficient evidence to prove the RSP charge as to Ms. Register's iPhone. The government's evidence demonstrated that Ms. Register's phone was stolen in October 2011, it was found somewhere in the electronic repair store during the execution of a search warrant, Mr. Brown was present at the store on November 22 and December 2, 2011, and a police officer believed that Mr. Brown owned the store and everything in it. The government's proof at trial also revealed that when Officer Singletary went to the store on November 22, other officers on the scene informed

---

[8] He added, "No direct evidence that Mr. Brown [-] wherever this item was found where he works, that the item got there as a result of someone telling [him] that the item was stolen, not that they wanted to take the items there for repair. Or whether they just wanted Mr. Brown to purchase. We have no evidence of that."

him that "someone . . . left out of the back of the location." Defense testimony, through Mr. S. Brown, indicated that in November and December 2011, "a bunch of people" worked out of the store, there were no bins to hold items and things got mingled, and he guessed his brother might own the store.

The trial court correctly instructed the jury, in part, that "the government must prove beyond a reasonable doubt . . . that the property in question had been stolen by someone; Mr. Brown bought, received, or possessed the stolen property"; and that "[a]t the time Mr. Brown did so, he knew or had reason to believe that the property was stolen; or at that time, he intended to deprive another of the right to the property or to a benefit of the property."[9] The government proved the first element − Ms. Register testified that her phone was stolen. However, the government's proof as to Mr. Brown's constructive possession of the phone and whether he knew or had reason to believe that the phone was stolen is quite weak and does not satisfy the "beyond a reasonable doubt" standard.

In order to prove that Mr. Brown constructively possessed Ms. Register's phone, the government was required to present evidence showing that Mr. Brown

---

[9] In 2011, the Council removed the "intent to deprive" element. *See Lihlakha*, *supra*, 89 A.3d at 483, n.4.

"knew of its presence [in the store] and [he] had both the ability and intent to exercise dominion and control over [the phone]." *Moore v. United States*, 927 A.2d 1040, 1050 (D.C. 2007); *see also W. v. United States*, 100 A.3d 1076, 1090 (D.C. 2014). "[K]nowledge and proximity alone are insufficient"; there must be evidence that Mr. Brown "intended to exercise dominion or control" over the contraband. *Rivas*, *supra*, 783 A.2d at 128. "There must be some action, some word, or some conduct that links the individual to the contraband and indicates . . . some stake in it, some power over it." *In re R.G.*, 917 A.2d 643, 649 (D.C. 2007) (citation and quotation omitted).

In cases involving the presence of more than one person on the premises where the illegal contraband was found, "common possession of contraband is not indicated." *Moore*, *supra*, 927 A.2d at 1051. In such cases, "a defendant's control over the place is not by itself enough to establish constructive possession of contraband found there." *In re R.G.*, 917 A.2d at 649 (citations and quotations omitted). Instead, the government was required to provide evidence linking Mr. Brown to Ms. Register's phone. *Id.* at 650 (held that test for constructive possession not met where appellant did not have exclusive control over the room where police discovered handgun, no evidence linked her to the handgun, it was not mixed in with her belongings, and there was no additional evidence of guilt on

her part). We conclude that on this record the inference that Mr. Brown possessed Ms. Register's phone simply because it was found in a store where he worked, and where Ms. Bass's phone was discovered, is not justifiable or reasonable.[10]

Nor is the inference that he knew or had reason to believe that Ms. Register's phone was stolen reasonable or justifiable on this record. We have said that the "mental state" required under the RSP statute "should be interpreted and defined as a subjective one, focussing on the defendant's actual state of mind, and not simply on what a reasonable person might have thought." *DiGiovanni v. United States*, 580 A.2d 123, 126 (D.C. 1990) (Steadman, J., concurring). Nevertheless, we have also recognized that "a jury reasonably may infer the requisite state of mind for the offense of receiving stolen property where evidence reveals defendant's unexplained (or unsatisfactorily explained) possession of recently stolen property." *Owens v. United States*, 90 A.3d 1118, 1122 (D.C. 2014). (internal quotation marks and citation omitted). In addition, "[i]t also is

---

[10] The government filed a ten-count superseding indictment in this case alleging trafficking in count one due to receipt and possession of electronic items belonging to nine different persons, and nine counts of RSP. However, the government dismissed five RSP counts (3, 4, 7, 8 & 9) before trial, and the jury found Mr. Brown not guilty of one RSP count (count five). Had the government presented credible evidence regarding some of the dismissed counts, the inference that because Mr. Brown possessed several other stolen electronic items, he also possessed Ms. Register's phone, may have been justifiable or reasonable on that record.

appropriate for the jury to consider what a reasonable person would have believed to inform its analysis of the defendant's own state of mind." *Id*. (citation omitted).

Here, however, there is no direct or indirect evidence that shows Mr. Brown's mental state with respect to Ms. Register's phone, and we believe that an inference concluding that all of the phones in the electronic repair shop were stolen sweeps too far given the sparse evidence about Ms. Register's phone, and about the repair shop – who worked there, and its ownership. As we noted approvingly in *DiGiovanni*, "[s]pecific intent requires more than a mere general intent to engage in certain conduct or to do certain acts." *DiGiovanni*, *supra*, 580 A.2d at 126. In short, even viewing the evidence in the light most favorable to the government, we cannot conclude that a reasonable juror could find that Mr. Brown had constructive possession of Ms. Register's phone, or that he knew or had reason to believe that Ms. Register's phone had been stolen. Consequently we reverse his RSP conviction concerning Ms. Register.

Finally, because D.C. Code §22-3231 (b) provides that "[a] person commits the offense of trafficking in stolen property if, on 2 or more separate occasions, that person traffics in stolen property, knowing or having reason to believe that the property has been stolen," Mr. Brown's conviction for trafficking in stolen goods

must be reversed.  Given our disposition, the government failed to satisfy the "2 or more separate occasions" element of the trafficking statute.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court with respect to the RSP conviction relating to Ms. Bass, but we reverse its judgment both as to the RSP conviction regarding Ms. Register, and the trafficking conviction.  We remand the case for re-sentencing.

*So ordered.*