**Cornell G. MACK, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 99–CF–1611.

District of Columbia Court of Appeals.

Argued Feb. 20, 2001.

Decided May 10, 2001.

---

Paul J. Riley, appointed by the court, Washington, DC, for appellant.

Frances M. Raskin, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, at the time the brief was filed, John R. Fisher, Lynn C. Holliday, and Chad T. Sarchio, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and KING, Senior Judge.

REID, Associate Judge:

After a jury trial, appellant Cornell G. Mack was convicted of assaulting a police officer ("APO"), in violation of D.C.Code § 22–505(a) (1996); escape from an officer, in violation of § 22–2601(a)(2); carrying a pistol without a license ("CPWL"), in violation of § 22–3204(a); possessing an unregistered firearm ("UF"), in violation of § 6–2311(a) (1995); and possessing unregistered ammunition ("UA"), in violation of § 6–2361(3).[1]  On appeal, Mack contends

---

1. The trial court granted Mack's post-trial motion for a new trial on the CPWL, UF and UA counts.  However, the government later dismissed these charges.  Mack was sen-

that: 1) his conviction of APO merges with his conviction of escape; and 2) the evidence presented at trial was insufficient to sustain a conviction under § 22–2601. We affirm.

## FACTUAL SUMMARY

At trial, the government's evidence showed that, at approximately 9:00 p.m. on February 23, 1999, Officer Albert Williams, a six-year veteran of the Metropolitan Police Department ("MPD"), was "working mountain bike patrol" along the 1100 block of Montello Avenue, N.E., in the District. During this patrol, Officer Williams was wearing his official blue "mountain bike uniform" which visibly contained the word "Police."

As Officer Williams was riding north between Montello and Trinidad Avenues, N.E., he heard someone shout out "one time,"[2] and immediately observed Mack "coming from an alley ... [with] a marijuana cigarette in his right hand[,] and a[n] ... open container of alcohol [in the other]." Intending to place Mack under arrest, Officer Williams "told him to get on his knees," and proceeded to go "over to him." However, "[Mack] ... sprung up and started ... swinging ... like [he was] trying to get away." As Officer Williams attempted to restrain him by "grab[bing] him around the shoulders," Mack "took his jacket off" and started "throwing punches." Officer Williams then "grabbed ahold of him and picked him up and ... kind of threw him to the ground." As he proceeded to "place him under arrest," Mack "punched [Officer Williams] in [his

left] eye" and absconded without pursuit. After retrieving Mack's jacket and searching it, Officer Williams found a .38 caliber loaded handgun, a cell phone, a scale, and "some papers" which bore Mack's name.

Later that evening, after being shown a single photograph by a fellow officer, Officer Williams identified Mack as his assailant. Officer Williams was confident that Mack was the individual who assaulted him because he "had seen [Mack] plenty of times in the area."

At trial, Mack testified on his behalf as the only defense witness, and argued misidentification. After admitting that the recovered jacket may have belonged to him, he stated that his jacket was stolen from him one day prior to the assault on Officer Williams.

## ANALYSIS

### The Merger Issue

Mack asserts that if this court finds that he was in lawful custody during his altercation with Officer Williams, it must nevertheless reverse and remand this matter for a new trial because the "[APO] conviction [should have] merged with [the] Escape [conviction], as a lesser-included offense." The government contends that Mack's merger argument "fails as a matter of law [because] [e]ach of the[ ] offenses require[ ] proof of a fact or element not found in the other." In *Silver v. United States*, 726 A.2d 191 (D.C.1999), a case where the appellant alleged his conviction of cruelty to animals merged with his conviction for animal fighting because animal

tenced to three to nine years in prison on the APO conviction, and consecutively, to eighteen to fifty-four months on the escape offense. Later, his sentence on the APO conviction was reduced to twenty to sixty months, while Mack's appeal was pending in this court. Therefore, consistent with the govern-

ment's suggestion, we remand this case to the trial court for resentencing with respect to Mack's corrected sentence.

**2.** Officer Williams testified that "one time" is a code term used to inform bystanders that a police officer is in the area.

cruelty was a lesser included offense of animal fighting, we recently observed that

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 194 (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)); *accord Byrd v. United States,* 598 A.2d 386, 389 (D.C.1991) (*en banc*) (other citation omitted). *See also Simms v. United States,* 634 A.2d 442, 447 (D.C.1993).

■ A review of §§ 22–505(a)[3], and 2601(a)(2)[4] illustrates that "each crime requires proof of an element which the other does not...." *Silver, supra,* 726 A.2d at 194. An individual who unjustifiably assaults, resists, opposes, impedes, intimidates, or interferes with a District of Columbia police officer while the officer is performing his or her official duties, at a time when the individual knew or had reason to believe that the complainant was a District police officer, may be found guilty of APO. *See* D.C.Code § 22–505(a); Criminal Jury Instructions for the District of Columbia, No. 4–11 (4th ed.1993). In contrast, to obtain a conviction for escape, the government must show that a person was in lawful custody and attempted to escape. *See* § 22–2601(a)(2); Criminal Jury Instructions for the District of Columbia, No.

4.99 A (1996 Supp.). Thus, since each of these crimes demands "proof of an element which the other does not," *Silver, supra,* 726 A.2d at 194, we agree with the government that Mack's convictions for APO and escape, do not merge. *See Byrd, supra,* 598 A.2d at 389; *Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. 180.

*The Sufficiency Issue*

■ Mack contends that the trial court erred in denying his motions for judgment of acquittal, both at trial and after trial, because "the evidence presented by the government in it[s] case-in-chief did not show that [he] was in 'lawful custody' before he fled his jacket and ran away." Specifically, he argues that "custody" under § 22–2601 requires commitment "to a facility by a judicial order."

■ Viewing the evidence in the light most favorable to the government, as we must, *see Foster v. United States,* 699 A.2d 1113, 1115 (D.C.1997), and based primarily upon the testimony of Officer Williams, we conclude that the government satisfied its burden of proving, beyond a reasonable doubt, that Mack was in lawful police custody immediately prior to his escape. First, we reject Mack's argument that commitment "to a facility by a judicial order" is required under § 22–2601(a)(2). The plain words of § 22–2601(a)(2) do not require a commitment to a facility before an individual may be charged with escape under this subsection. Indeed, in contrast

---

**3.** Section 22–505(a) provides:

Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia ... while engaged in or on account of the performance of his or her official duties, shall be fined not more that $5,000 or imprisoned not more than 5 years, or both. It is neither justifiable nor excusable for a person to use force to resist an arrest

when such arrest is made by an individual he or she has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

**4.** Section 22–2601(a)(2) states:

No person shall escape or attempt to escape from ... [t]he lawful custody of an officer or employee of the District of Columbia or of the United States.

to § 22–2601(a)(2), § 22–2601(a)(1) specifically applies to an escape from a penal institution or facility to which a person is confined by a judicial order. Moreover, at least one other jurisdiction has declined "to read into [a] statute [that is similar to ours] the requirement that 'custody' be limited to mean institutional custody." *State v. Adams,* 152 Wis.2d 68, 447 N.W.2d 90, 94 (App.1989).

■ Second, Mack's argument that he was not in " 'lawful custody' before he fled his jacket and ran away," is unpersuasive. We have not previously construed § 22–2601(a)(2) with respect to the meaning of the words, "lawful custody of an officer." However, other jurisdictions, which have addressed the issue, emphasize the physical restraint of an individual by a law enforcement officer. In *State v. Cole,* 172 Ariz. 590, 838 P.2d 1351 (App.1992), police officers were in the process of effecting an arrest by "clutch[ing]" both arms of a suspect when he "began waving his arms and physically dragged ... [two] officers approximately 25 feet." When "[t]he officers ... grabbed [the suspect's] shirt, ... it tore and he fled." *Id.* at 1352. The Arizona Court of Appeals sustained the escape conviction, concluding that the appellant had "escaped from actual restraint," and that "both officers [had] physically restrained the [appellant], if only temporarily, by clutching his arms and then his shirt." *Id.* at 1353; *see also Medford v. Texas,* 21 S.W.3d 668, 669 (Tex.App.2000) ("[f]or purposes of the escape statute, an 'arrest' is complete when a person's liberty of movement is successfully restricted or restrained [ ] by an officer's physical force or the suspect's submission to the officer's authority."). The court in *Cavell v. Virginia,* 28 Va.App. 484, 506 S.E.2d 552 (1998), reversed a conviction under the escape statute in part, because the "appellant did not submit, in any respect, to [the officer's]

show of authority and [ ] was not detained by the exercise of any physical restraint at the time he fled." *Id.* at 553. Nonetheless, the court reiterated the legal principle that: " 'Ordinarily, an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer.' " *Id.* (quoting *Howard v. Commonwealth,* 210 Va. 674, 173 S.E.2d 829, 832 (1970)).

■ Based upon our review of case law from other jurisdictions, we now hold that where an officer physically restrains a person pursuant to a lawful arrest, or where the person has submitted to a lawful arrest, lawful custody exists within the meaning of § 22–2601(a)(2). In the case before us, the record reveals that after Officer Williams ordered Mack "to get on his knees," Mack "sprung up and started going wild [and] swinging ... like [he was] trying to get away." After a brief struggle, Officer Williams then "grabbed [ ] hold of [Mack] ... picked him up ... threw him to the ground ... [and] slouched over [him] ..., [while] trying to get on [his] radio." Under these circumstances, there was some manifestation that the officer physically restrained Mack, for the purpose of effecting his arrest, by grabbing and picking him up. Thus, in light of our decision to follow the physical restraint legal principle articulated in *Medford, Cavell,* and *Cole, supra,* we see no reason to disturb the jury's verdict that Mack escaped from the "lawful custody of an officer ... of the District of Columbia," in violation of § 22–2601(a)(2).

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*