*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-1375

CARLOS DAVIS, APPELLANT,

v.

UNITED STATES, APPELLEE.

08/10/2017
FILED
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-21764-13)

(Hon. John McCabe, Trial Judge)

(Argued June 7, 2016　　　　　　　　　　　　　Decided August 10, 2017)

*Daniel S. Harawa*, Public Defender Service, with whom *James Klein* and *Jaclyn Frankfurt*, Public Defender Service, were on the brief, for appellant.

*Ryan M. Malone*, with whom *Vincent H. Cohen, Jr.*, Acting United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne G. Curt*, and *Nebiyu Feleke*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and RUIZ, *Senior Judge*.

FISHER, *Associate Judge*: Appellant Carlos Davis claims the evidence was insufficient to support his conviction for escape, arguing that he was not in the "lawful custody of an officer" when he ran away to avoid being handcuffed. We agree, and thus we reverse and remand.

## I.    Background

Around 12:30 a.m. on December 12, 2013, Officer Phillip McHugh and his partner were patrolling in their marked police car when they spotted appellant, who appeared to be urinating against a dumpster near the intersection of Florida Avenue and Trinidad Avenue, N.E.  Officer McHugh stopped the car and turned on its flashing lights and spotlight, exited the vehicle, and approached appellant. Appellant turned to face the officer, with his jeans still "unbuttoned and flapped open."  Officer McHugh told appellant to button his pants "and then to put his hands on the railing" "in front of" an adjacent market.  He did not announce that appellant was under arrest.

McHugh testified that he then "walked behind" appellant and

> with my left hand, grabbed the back of his pants, his belt
> and his pants[,] to hold onto him.  I then unsnapped my
> handcuff case on my duty belt and began removing the
> handcuffs with the intention of arresting Mr. Davis for
> urinating in public.  When I told Mr. Davis to put his
> hands behind his back, he did not comply.  Instead, he
> turned around, shoved me[,] and then took off running.

After a chase, appellant was arrested.

At the ensuing trial, the jury was instructed: "A Defendant is under lawful custody when he is physically restrained by an officer pursuant to a lawful arrest or when he submits to a lawful arrest. To escape means to knowingly or deliberately leave physical confinement without permission." The jury convicted appellant of escape from the custody of an officer and other offenses not challenged on appeal.

## II.    Analysis

Appellant asserts that "the government did not prove that [he] was in the lawful custody of an officer and thus, there was insufficient evidence to convict [him] of escape." Faced with a challenge to the sufficiency of the evidence, "we view the evidence in the light most favorable to the government." *McCray v. United States*, 133 A.3d 205, 227 (D.C. 2016) (citation omitted). However, appellant also raises an issue of statutory interpretation, which we review de novo. *District of Columbia v. Reid*, 104 A.3d 859, 866 (D.C. 2014). "At bottom, we are

called upon to determine the reach of the statute which prohibits [escape]." *Wynn v. United States*, 48 A.3d 181, 188 (D.C. 2012).[1]

### A. The Statute

The section of the District of Columbia Code at issue here is entitled "Escape from an Institution or Officer." D.C. Code § 22-2601 (a) (2016 Supp.). It reads in relevant part:

> (a) No person shall escape or attempt to escape from:
>
> > (1) Any penal or correctional institution or facility in which that person is confined pursuant to an order issued by a court of the District of Columbia;
> >
> > (2) The *lawful custody of an officer* or employee of the District of Columbia or of the United States[;] or

---

[1] Citing *Noaks v. United States*, 486 A.2d 1177, 1178-79 (D.C. 1985), the government asserts that appellant waived his right to our review of the evidence for sufficiency when he failed to renew his motion for judgment of acquittal after presenting his evidence at trial. However, as we have pointed out, it is *Washington v. United States*, 475 A.2d 1127, 1128-29 (D.C. 1984), not *Noaks*, that governs. *Wheeler v. United States*, 494 A.2d 170, 171-72 (D.C. 1985); *see also, e.g.*, *Brown v. United States*, 128 A.3d 1007, 1014 & n.6 (D.C. 2015); *Sutton v. United States*, 988 A.2d 478, 482 & n.5 (D.C. 2010). Thus, we review the sufficiency of the evidence to support appellant's conviction by considering all of the evidence presented at trial. *Sutton*, 988 A.2d at 482.

> (3) An institution or facility, whether located in the District of Columbia or elsewhere, in which a person committed to the Department of Youth Rehabilitation Services is placed.

*Id.* (emphasis added). The scope of this statute has broadened over the eighty-plus years since Congress first enacted it in 1932.

By its terms, the initial version penalized only the escape or attempted escape of persons "confined in a penal institution." Pub. L. No. 287, § 8, 47 Stat. 698 (1932). After the District Court of the United States for the District of Columbia held that the statute did not cover "the case of a prisoner escaping from the custody of an officer of the District of Columbia penal institutions" if "the escape took place outside of the institution's boundaries," Congress amended it in 1940. H.R. Rep. No. 76-1994, at 3 (1940). As modified, the statute still applied only to the escape of persons who had been "committed to a penal institution of the District of Columbia," but was broadened to cover such a person's escape or attempted escape "from the custody of any officer [of the penal institution] or any other officer or employee of the District of Columbia." Pub. L. No. 561, sec. 6 (a), § 8, 54 Stat. 243 (1940).

Following several amendments not relevant here, in 1994 the Council of the District of Columbia "redefine[d] the crime of prison escape" so that it also applied to an escape before "a person has been committed." D.C. Council, Report on Bill 10-98 at 16 (Jan. 26, 1994). The Council appears to have been particularly concerned that under the then-existing version of the statute, "a person sent to a halfway house before sentencing is not committed and thus cannot escape." *Id.* The Council addressed this concern by making it clear that the new statute applied to an escape from "[a]ny penal institution or facility in which that person is confined pursuant to an order issued by a court, judge, or commissioner of the District of Columbia." D.C. Code § 22-2601 (a)(1) (2001). However, the Council went further and also prohibited an escape from "[t]he lawful custody of an officer or employee of the District of Columbia or of the United States." *Id.* § 22-2601 (a)(2). Thus, "[t]he new definition of escape includes all escapes from lawful custody, before and after sentencing." Report on Bill 10-98 at 16.[2]

---

[2] The federal escape statute, *see* 18 U.S.C. § 751 (2012), expanded in a similar fashion. It first applied only to persons who had been "properly committed to the custody of the Attorney General or his authorized representative" or "confined in any penal or correctional institution." Pub. L. No. 218, § 8, 46 Stat. 327 (1930). Congress later amended the federal statute to prohibit escape by a person who was in the "custody of an officer of the United States pursuant to lawful arrest." Pub. L. No. 233, 49 Stat. 513 (1935).

*B. Mack v. United States*

Only one published decision in this jurisdiction has interpreted how § 22-2601 applies to circumstances like those presented here. *See Mack v. United States*, 772 A.2d 813 (D.C. 2001) (affirming appellant's conviction for "escape from an officer"). In that case, an officer approached Mr. Mack, intending to place him under arrest, and "told him to get on his knees." *Id.* at 815. It appears that Mack complied with the order, but then "sprung up and started going wild" before the officer reached him. *Id.* at 815, 817. When the officer first tried to restrain Mack by "grab[bing] him around the shoulders, Mack took his jacket off." *Id.* at 815 (alteration in original) (internal quotation marks omitted). After a "brief struggle," *id.* at 817, during which Mack "started throwing punches," the officer "grabbed ahold of him and picked him up and . . . kind of threw him to the ground," then "proceeded to place him under arrest." *Id.* at 815 (internal quotation marks omitted). However, Mack broke free and "absconded without pursuit." *Id.* He was arrested later. *Id.*

The question before the court in *Mack* was the meaning of the phrase "lawful custody of an officer." 772 A.2d at 817. The court rejected Mack's argument that "'custody' under § 22-2601 requires commitment 'to a facility by a

judicial order,'" *id.* at 816, instead holding that "where an officer physically restrains a person pursuant to a lawful arrest, or where the person has submitted to a lawful arrest, lawful custody exists within the meaning of § 22-2601 (a)(2)." *Id.* at 817.

In adopting this two-pronged test for determining when a person is in custody, *Mack* followed the "physical restraint" principle articulated in cases from Arizona, Texas, and Virginia. 772 A.2d at 817 (citing and quoting from *State v. Cole*, 838 P.2d 1351 (Ariz. Ct. App. 1992); *Medford v. State*, 21 S.W.3d 668 (Tex. App. 2000); and *Cavell v. Commonwealth*, 506 S.E.2d 552 (Va. Ct. App. 1998) (en banc)). A close examination of these cases illuminates the premises of our holding in *Mack*. Taken together, they reveal that "lawful custody" within the meaning of the escape statute is not established merely because officers tell a suspect he is under arrest or seize him for investigative purposes. There must be a completed arrest. As the jury was instructed in this case, a defendant "is under lawful custody when he is physically restrained by an officer pursuant to a lawful arrest or when he submits to a lawful arrest."[3]

---

[3] Here, appellant makes no claim that he was detained unlawfully, only that the detention did not constitute "custody."

In *Medford*, the court made clear that seizure of a suspect is insufficient to place him in custody. 21 S.W.3d at 669-70. An officer frisked Medford, felt objects in his pocket, and received his consent to remove them. *Id.* at 669. After discovering a matchbox containing crack cocaine, the officer "told Medford he was under arrest and instructed him to place his hands behind his back." *Id.* The officer had "touched Medford's left arm . . . and was about to handcuff him when Medford lunged free and began running." *Id.* at 669-70 (citation omitted). The court held that "[a]n arrest must be complete in order to distinguish the offense of escape from the offense of evading arrest." *Id*. at 669.

"For purposes of the escape statute, an arrest is complete when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority." *Medford*, 21 S.W.3d at 669 (internal quotation marks omitted). In other words, "an arrest is complete only if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* (internal quotation marks omitted). Drawing the line even more clearly, the court said, "a reasonable person's belief that he is not free to leave is not enough to constitute 'arrest' or 'custody' under the escape statutes." *Id.* at 670. Applying this standard,

the court vacated Medford's escape conviction because the officer was "unable to complete the arrest by successfully restricting or restraining Medford's liberty of movement before Medford fled." *Id.*

Nevertheless, as *Cole* illustrates, the restraint does not have to be entirely successful for the suspect to be "in custody." An officer told Cole he was "under arrest" on an outstanding warrant, and then two officers "clutched" his arms. 838 P.2d at 1352. Cole "began waving his arms and physically dragged the two officers approximately 25 feet." *Id.* Seeking to gain control, "[t]he officers then grabbed [Cole's] shirt, but it tore and he fled." *Id.*

Under Arizona law, "a person must be under arrest either by actual restraint or having submitted to the custody of the person making the arrest before he can escape." *Cole*, 838 P.2d at 1353. Defendant Cole moved to dismiss, arguing that "because he did not submit to the custody of the officers and they did not have physical control over him[,] as proven by his escape, his flight did not amount to the criminal offense of escape." *Id.* at 1352. The trial court dismissed the charge, but the Court of Appeals reinstated it because, after being "verbally informed . . . that he was under arrest," Cole "escaped from actual restraint by using physical force against the officers." *Id.* at 1353.

Finally, in *Cavell*, the court reversed a defendant's escape conviction where the officer told him, "Don't run. You are under arrest[,]" but was never close enough to "grab" him before he ran. 506 S.E.2d at 552. The court followed the common law principle that "an arrest is made by the actual restraint of the person of the defendant or by his submission to the custody of an officer." *Id.* at 553. As we emphasized in *Mack*, Cavell "did not submit, in any respect, to [the officer's] show of authority and [ ] was not detained by the exercise of any physical restraint at the time he fled." 772 A.2d at 817 (alterations in original) (quoting *Cavell*, 506 S.E.2d at 553). The Virginia court held that Cavell did not escape because he "was not under arrest and, thus, was not in custody when he fled."[4] *Cavell*, 506 S.E.2d at 553.

---

[4] A few years later, the Supreme Court of Virginia clarified that "to the extent that *Cavell* stands for the proposition that a formal arrest is necessary to establish custody as contemplated by [Virginia's escape statute], it was erroneously decided." *White v. Commonwealth*, 591 S.E.2d 662, 666 n.3 (Va. 2004). Rather, "an individual is in 'custody,' as contemplated by [Virginia's escape statute], when a law enforcement officer has lawfully curtailed the individual's freedom of movement to a degree associated with a formal arrest, even when a formal custodial arrest has not been effected." *Id.* at 667 (internal quotation marks omitted). However, the court flatly rejected the argument that when White permitted a pat-down search, it "amounted to a curtailing of his freedom of movement to a degree associated with a formal arrest." *Id.* "Otherwise, we would be forced to conclude that every investigative detention would transform into custody of the individual as soon as the individual acquiesced in the officer's request to permit such a search." *Id.*

Based on these principles, we held in *Mack* "that where an officer physically restrains a person pursuant to a lawful arrest, or where the person has submitted to a lawful arrest, lawful custody exists within the meaning of § 22-2601 (a)(2)." 772 A.2d at 817. Yet, the government argues that "[n]either § 22-2601 (a)(2) nor *Mack* requires an arrest to establish 'custody' of a defendant for purposes of escape." We disagree. The phrase "pursuant to a lawful arrest," central to our holding in *Mack*, does not mean, as the government urged at oral argument, "while attempting to make a lawful arrest." The government makes no effort to argue that appellant had been arrested before he fled.

Suggesting that our decision in *Mack* supports its argument, the government points to a passage where we found "unpersuasive" Mack's "argument that he was not in lawful custody before he fled his jacket and ran away." 772 A.2d at 817 (internal quotation marks omitted). We do not construe this comment as a legal conclusion that custody had been established before Mack "fled his jacket." Indeed, such a conclusion would have been inconsistent with the ruling in *Medford*, a case on which we relied. Our holding focused instead on a slightly later point in time when the officer grabbed Mack, picked him up, and threw him to the ground, then "proceeded to place him under arrest." *Id*. at 815, 817. That

police action constituted the physical restraint necessary to establish "lawful custody."

Of course, the officer's action in *Mack* did not restrain the defendant for long. Nevertheless, we upheld his conviction for escape. 772 A.2d at 817. Similarly, the conviction was upheld in *Cole*, where the defendant dragged two officers for twenty-five feet before breaking free. 838 P.2d at 1352-53. These cases illustrate the truism that an escape could never occur if the physical restraint applied by an officer were completely effective. On the other hand, *Medford* and *Cavell* establish that there must be more than an attempt to arrest the suspect. At no point was Officer McHugh able to physically restrain appellant Davis to the extent that the officers in *Mack* and *Cole* were able to restrain their arrestees. Here, the lack of actual restraint is more comparable to the facts in *Medford*, where the conviction was reversed. We hold that Officer McHugh did not have sufficient physical control over appellant for him to be "in custody" at the time of the purported "escape."

The plain meaning of the term, and the legislative history described above, require a robust concept of "custody." Although we are dealing here with a question of legislative intent, it is appropriate to note that, in Fourth Amendment

law, we distinguish between a detention and an arrest, *see, e.g.*, *Gordon v. United States*, 120 A.3d 73, 78-79 (D.C. 2015), and in Fifth Amendment jurisprudence, we differentiate between a seizure and custody, *see, e.g.*, *In re I.J.*, 906 A.2d 249, 255-61 (D.C. 2006). We see no justification for relaxing the meaning of "custody" here. In reaching this conclusion, we are reassured by the fact that a different statute criminalizes efforts to evade arrest. *See* D.C. Code § 22-405 (2016 Supp.) (making it unlawful to resist arrest). We thus decline the government's invitation to expand the statute's coverage so far beyond its roots. Appellant's conviction for escape must be vacated because he was not in the "lawful custody of an officer" at the time he ran.

## III.   Conclusion

We reverse and remand to the trial court with instructions to vacate appellant's escape conviction.

*It is so ordered.*